## JORDAN et al. v. JORDAN.

(Court of Civil Appeals of Texas. Texarkana.
Feb. 13, 1913. Rehearing Denied
March 6, 1913.)

1. TRUSTS (§ 89*)—RESULTING TRUSTS—EVI-DENCE—SUFFICIENCY.

In an action to declare a trust in land purchased by defendants' decedent with money furnished by plaintiff, evidence *held* to show that the money was lent to decedent, and that he purchased the property for himself.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 134–137; Dec. Dig. § 89.*]

2. TRUSTS (§ 80*)—RESULTING TRUSTS—PURCHASE OF LAND.

A mere lender of money used in purchasing land conveyed to the borrower can claim no resulting trust in his favor.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 113, 114; Dec. Dig. § 80.*]

3. LIENS (§ 7*)—EQUITABLE LIEN.

A mere lender of money used to purchase land conveyed to the borrower has no lien upon the land.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 26–28; Dec. Dig. § 7.*]

Appeal from District Court, Cass County; P. A. Turner, Judge.

Action by W. C. Jordan against Robert L. Jordan and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

On February 17, 1887, Jordan Galloway and wife, by warranty deed, conveyed to Albert C. Jordan 190 acres of land in Cass county. The following part of the deed need only be stated: "Know all men by these presents that we, Jordan Galloway and E. A. Galloway, wife of the said Jordan Galloway, both citizens of said county, for and in consideration of the sum of four hundred dollars to us in hand paid by Albert C. Jordan, also of said county and state, the receipt whereof is hereby acknowledged, have this day granted, sold, released and conveyed unto the said Albert C. Jordan, his heirs, representatives, all of our right, title, claim and interest to the following tract or parcel of land: [Description follows]," etc. Albert C. Jordan, the grantee in the deed, died in August, 1899; and thereafter, in September, 1906, his children made partition deeds of the land. On August 29, 1911, appellee, who is the brother of Albert C. Jordan, brought this suit against the children of the deceased, Jordan, claiming that he furnished the purchase money for the land, and that A. C. Jordan in his lifetime, and the children since his death, had and held the title to the land in trust for him, and that he was entitled to recover the same. The petition prayed in the alternative for the recovery of the purchase price paid, with interest and rents from the date of the purchase, with a foreclosure of the vendor's lien, and had the further prayer that, in case the defendants' plea of limitation interposed against the purchase money, interest, and rents be sustained by the court, then the plaintiff be decreed the land under his superior title as vendor or party who paid the purchase money for the land. The appellants filed a general demurrer and special exceptions and answered by denial, and specially pleaded the statute of four years' limitation against the recovery of any debt and the foreclosure of any lien. After all the evidence was in, the court instructed the jury to return a verdict for the appellee.

O'Neal & Allday, of Atlanta, for appellants. O'Neal & Figures, of Atlanta, and Geo. T. Todd, of Jefferson, for appellee.

LEVY, J. (after stating the facts as above). The appellants, by proper assignment, predicate error upon the action of the court in giving a peremptory instruction to the jury to return a verdict for appellee. The whole case as made by the pleadings and proof resolves itself into the question of the legal effect to be given the acts and transactions between appellee and his brother, Albert C. Jordan, now deceased, concerning the purchase of the tract of land in suit. The evidence consists entirely of letters and written instruments, which were undisputed, and there were no issues of fact raised by the evidence. It is the contention of appellee that, while the deed to the land in suit was made to his brother, Albert C. Jordan, father of the appellants, he paid the purchase money, and the title to the land was taken in the name of his brother and held by him for appellee in trust. It is the contention of appellants that their father was himself the purchaser of the land, and that the money obtained from the appellee to pay for the same was a mere loan and nothing more, and that promissory notes bearing interest were given for it. In 1886 the appellee resided in the state of Alabama, and Albert C. Jordan, his brother, resided in Cass County, Tex. Albert C. Jordan at the time was renting the land in controversy from Jordan Galloway, the owner. On October 3, 1886, he wrote a letter to his brother, as follows: "Dear Brother: * *. * My corn crop was on the poorest land and very old, but reckon made enough to do with nearly, no rain, the drouth continued through August, ruined the cotton nearly, three bales instead of eight. I have a hundred acres under good fence. The best land is to clear under the same fence. I have plenty of good bottom land too that is not under fence. I had an overhauling with my man recently and got him to knock off the rent and am to give $400.00 for the place cash consideration. My cotton crop will not more than pay my other debts at present prices. I would like to get $400.00 from you and pay up for the land and be obliged to you until better paid."

On October 30, 1886, A. C. Jordan, deceased, wrote appellee as follows: "Dear Brother: Yours of 13th inst. came to hand a few days ago. * * * I am so pestered at this

time that I hardly know what to write. I thought and think yet it was a fair understanding with Galloway and myself that as soon as opportunity would afford we were to go into writings and if I did not have the money by that time I was to give my note for the amount and let it run at ten per cent. until I could get the money and agreed to give me the rent. He sent me word day before yesterday that he gave me the rent for the sake of getting the money all down and says that was his understanding about it, and can't wait until next spring for the money, if I had the money I would pay him up but have not and don't know what to do. I will never find another such bargain."

The said A. C. Jordan, deceased, wrote appellee as follows on December 26, 1886: "Dear Brother: Yours of the 18th inst. came to hand the 24th and was very glad to hear from you as soon as I did, and feel very much gratified in knowing I have a friend in the right time, especially a brother and friend in one. I hope you will never lose anything in doing what you proposed to do in your last communication. I will try to make you safe. I will want time. And I want to arrange so that in the event of the demise of either one of us to bind the land for the payment for the amount (400 doll.) and interest, if there be any, and would be more than glad if it don't misput you to pay Galloway up and ease his pain, his understanding was that he gave me the rent this year for the sake of getting the $400.00 paid down by the first of January. My understanding was that he was ready to draw writings any day whenever I got ready and if I did not have the money just give him my note for the above amount due and drawing 10% interest from date and after news came to him that I could not get the money for him perhaps before next March or April it sot him on fire. He then sent me word about the misunderstanding. I sent him word that it was no misunderstanding with me, and that I had not flew from the contract yet, and I was ready to draw writings at any time whenever he got ready to let me know. I was ready at any time whenever he said the word, and that I should hold him to his contract and do what I said I would do, pay him whenever I got the money. I have met up with him two or three times since that time. We meet and pass friendly. He says he is satisfied you and I will do what we say we will do and says in case of failure by death or other providential occurrence any improvements I put on the place he is willing to let it go towards rent. But if he can get the money pretty soon he is willing then to let land and all go for the money, by or before the time you said."

On February 18, 1887, A. C. Jordan, deceased, wrote his brother the following letter: "Dear Brother: * * * Myself and Jordan Galloway were at Hughes Springs

day before yesterday and got the package you expressed to me containing $200.00. I had to pay them 25¢ additional to what you paid which was the charge from, they said, Pittsburg to Hughes Springs. * * * I shall always feel under obligations to you and if I should ever be so fortunate as to get able to pay you I will do it with the greatest of pleasure, and if the land will make you safe I am willing and will make it stand for the debt. And I hope and trust you may be able before long to help finish up paying for the land as soon as you can conveniently. I would feel better if he was paid up as he made a right smart item in my favor, for the sake of getting the money pretty soon and then the land would be bound to nobody but you. If I had it paid for I think I would stay here the balance of my life. Enclosed I send you the note, consideration," etc.

The note inclosed was as follows: " 'Conditions of this note stated below the note $200.-00.' On or before the 1st day of January, A. D. 1890, I promise to pay Wm. C. Jordan or bearer the sum of $200.00 with interest from date value received. February 17th, 1887. [Signed] A. C. Jordan. The above note was given to the said Wm. C. Jordan for loan of the above amount to enable me in part paying for a tract of land I bought from Jordan Galloway of Cass County, Texas, containing 190 acres more or less said land lying in said county and state and myself am living on said tract last year as well as this. The land is better described in the deed purchased by me this day of the said Galloway et al. The deed bears even date with this note and upon said land a vendor's lien is retained. This Feb. 17, 1887. [Signed] Albert Jordan."

On the 18th of June, 1887, A. C. Jordan deceased, wrote his brother, appellee herein, a letter inclosing the other note. The letter was as follows: "Dear Brother: * * * I send enclosed to you note in place of the money you let me have to finish paying for my land. I stated in the note the nature of it and left a blank place for you to fill out (i. e.) the date of the first as I have forgotten it. * * * If it's the Lord's will hope I may be enabled to pay you up before I leave this tabernacle and if I don't the land is good security. I know you have done all you could under the circumstances, and I shall always feel under obligations."

The note inclosed in this letter read as follows: "Land note. $200.00. By the 1st day of Jan., 1891, I promise to pay Wm. C. Jordan or bearer the sum of $200.00 value received. June 1st, '87 (with interest from date). [Signed] Albert Jordan. The nature of the above note is the same as the one given Feb. 17th, '87, the same land described in it and bound for payment of said note is equally bound for the payment of this note just the same as if both notes were consolidated. [Signed] A. C. Jordan."

On June 27, 1893, Albert C. Jordan, deceased, wrote appellee the following letter: "Dear Brother: * * * I bargained some cattle yesterday for some lumber to fix up house. I try to take care of the place what time I stay on it the same as if it belonged to me. I never expect to own it for I never expect to be able to pay for it. If I was able or had sufficient force to work it I might make some better showing. I have never had any health to do anything since the Mexican war. * * * [Signed] Albert C. Jordan."

[1, 2] The deed in evidence shows that Jordan Galloway and wife, on February 7, 1887, in consideration of $400 to them in hand paid by Albert C. Jordan, conveyed the land in controversy to said Albert C. Jordan. The evidence further shows that appellee came to Texas in 1910, which was 23 years after the execution of the two notes and 17 years after they had fallen due, and agreed to settle with the appellants for $400, and appellants failed to pay it. Thus, as seen from the letters, there was no agreement by Albert C. Jordan to purchase the land for appellee. On the contrary, the letters show conclusively that Albert C. Jordan was purchasing the land exclusively for himself, and was asking his brother to assist him in making the purchase by way of loan of money. The first letter written by Albert C. Jordan to appellee says, "I would like to get $400.00 from you and pay up for the land and be obliged to you until better paid." The next letter advises appellee, "I will never find another such bargain;" while the letter following says to him: "I will try to make you safe. I will want time. And I want to arrange so that in the event of the demise of either one of us to bind the land for the payment for the amount (400 doll.) and interest, if there be any." On the very day the deed was made Albert C. Jordan wrote appellee a letter inclosing a promissory note, saying in the letter: "I shall always feel under obligations to you and if I should ever be so fortunate as to get able to pay you I will do it with the greatest of pleasure, and if the land will make you safe I am willing and will make it stand for the debt." Again he wrote appellee, inclosing the second note, saying: "I send enclosed to you note in place of the money you let me have to finish paying for my land." These letters, with the recital in the notes, go to show conclusively the intention of the parties with respect to the purchase of the land and the loan of the money. The letter of June 27, 1893, after the maturity of the notes, is perfectly consistent with the relation of debtor and creditor, and in no wise changes the aspect of the original transaction. The facts conclusively establish that Albert C. Jordan purchased the property for himself and as his own; and that the money that went to pay for same was obtained by Albert C. Jordan from appellee as a mere loan, and nothing more. These facts are inconsistent with any payment of money by appellee in the character of purchaser. No resulting trust exists in favor of one who pays the purchase money by way of mere loan to another; the conveyance being taken in the name of the borrower. Boehl v. Wadgymar, 54 Tex. 589; Levy v. Williams, 20 Tex. Civ. App. 651, 50 S. W. 528; Whaley v. Whaley, 71 Ala. 159; 1 Perry on Trusts, § 133.

[3] Appellee prayed for a money judgment on the notes and a foreclosure of a lien on the land. It is not disputed that the notes and lien are barred by the statute of limitations, which is pleaded by appellants. If appellee furnished the money to pay the purchase price of the land, as a mere loan to his brother, as he did, he did not acquire or take the superior legal title, and could predicate no rights in that respect. See Hatton v. Bodan Lumber Co., 57 Tex. Civ. App. 478, 123 S. W. 163.

The court erred in instructing a verdict for appellee. As the facts required a verdict for appellants, we here render the judgment that should have been rendered in the trial court—that appellee recover nothing by his suit, and appellants recover the costs of the district court and of this appeal.