## WISE v. CECIL.

### No. 1929.

Court of Civil Appeals of Texas. Eastland.
July 7, 1939.

On Rehearing Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

236

Cox & Hayden, of Abilene, for appellant.

Davidson & McMahon, of Abilene, for appellee.

LESLIE, Chief Justice.

The opinion of this court on a former appeal is to be found in 109 S.W.2d 214, writ refused. The facts of the case are rather fully stated there. The difference, if any, in the material facts on this and the former appeal will be noted as the opinion proceeds.

Essentially this is a suit by C. W. Cecil to establish his right to title and ownership of the North 1/2 of Sec. 634, Certificate No. 487, Block B, John H. Gibson Original Grantee, Yoakum County, Texas. He alleges that Oscar Wise, the defendant, in purchasing said land from the trustee in bankruptcy and taking title thereto in his own name, paid for it with a consideration (a collateral note) owned or furnished by himself. That is, plaintiff seeks "to have impressed upon the land a trust with the effect that the lands stand in lieu of the note, subject to a like lien to secure the indebtedness as the collateral note." Plaintiff also alleged tender of indebtedness due and sought to exercise his right of redemption.

The defendant answered by general demurrer, general denial and specially alleged that in so purchasing the land he had an understanding with the appellee that the indebtedness owing by the latter to him would be canceled, etc. That he in fact acquired an indefeasible title, etc.

The trial was before the court without a jury, and at its conclusion judgment was rendered for the plaintiff Cecil vesting title to the land in him upon his compliance with certain conditions specified in the judgment. On request, the learned trial court made findings of fact and conclusions of law. These, in substance, clearly reflect the facts of the case and applicable rules of law, and will be here set out and adopted:

"1. I find as a fact that there was no agreement between C. W. Cecil and Oscar Wise whereby Wise agreed to purchase the land for C. W. Cecil or to purchase the land as the agent of Cecil, but bought the same in order 'to protect himself'.

"2. I further find as a fact that, after receiving notice from the Bankrupt Court of the proposed sale and terms thereof, defendant, Wise, went to John Porter, trustee in bankruptcy, and the said Porter prepared a proof of claim for said defendant and filed same in the estate of Mrs. Neal Mills, Bankrupt, and attached to the claim a copy of the vendor's lien note held as collateral, defendant, Wise, retaining the original; that after advertising said land for sale, of which plaintiff, Cecil, had notice from the Bankrupt Court, and after Wise had talked to Cecil about purchasing the land at said sale, the said Wise attended said sale and bid the sum of One Thousand Dollars for said land, which was paid by crediting the collateral vendor's lien note held by Wise to collaterally secure Cecil's indebtedness to Wise; that thereafter Wise received a trustee's deed to said land, John Porter, trustee of the bankrupt estate being grantor therein and Oscar Wise being grantee therein.

"3. I find as a fact that while such use of the vendor's lien note held by Wise as

collateral was with Cecil's consent, nevertheless, there was no agreement between Cecil and Wise whereby Wise agreed to cancel the debt and obligation of Cecil to Wise.

"4. I find as a fact that on April 4, 1934, there was written by Cecil, addressed to Wise, and received by Wise the following letter:

"'April 4, 1934

"'Mr. Oscar Wise,

"'Moran, Texas

"'Dear Mr. Wise:

"'As I will be out of town for a few days, I am writing to see if we cannot settle our deal like Mr. Chaney has suggested. He would like for us to finish our deal so he will know how to finish trading with me.

"'I am enclosing a statement of your merchandise account to deduct from the balance I owe you. I suggest that you give me a deed to the land and you retain first vendor's lien notes for the balance I owe you.

"'I would like to split the balance into two notes—one due in one year and the other in two years with the right to pay them sooner if financially possible.

"'By settling the matter this way, I can handle my part of the financing and it will give you some good first lien notes that you can use for collateral. I will also help you dispose of these notes so that you can get your money. Also by settling this matter, I will know how to settle with Mr. Chaney.

"'If these arrangements are suitable to you, please prepare the papers and I will sign them as soon as I return.

"'Yours very truly,

"'Copy to J. M. Chaney

"'1 enc.'

"5. I find as a fact that Wise made no reply to said letter and did not, after the receipt of said letter, advise Cecil that he claimed the indefeasible fee simple title to the lands in controversy.

"6. I further find as a fact that at the time of the sale by the trustee in bankruptcy Cecil's indebtedness to Wise was approximately $1,000.00, and that Wise credited the notes evidencing the indebtedness from Cecil to Wise with the sum of $1,000.00, but did not return to Cecil either the five notes representing the original indebtedness of Cecil to Wise nor the collateral vendor's lien note held by Wise to secure Cecil's indebtedness.

"7. I find as a fact that Oscar Wise paid the trustee in bankruptcy $30.00 in cash, as fees required in connection with the sale of said land, and since said sale has paid taxes on said land and interest on the state indebtedness, and has been in possession of said land, and has leased same for oil and gas, and has incurred expenses in looking after said land and making said leases, and that in accordance with the stipulation of the attorneys for the respective parties made in open court, taking all of said factors into consideration, the present indebtedness of Cecil to Wise is $1200.-00.

"8. I find as a fact that Cecil has not deposited any money into court to pay said sum of $1200.00, but has offered to pay same upon the execution by Wise of a conveyance to Cecil of the lands in controversy, and that Wise has refused to make such conveyance.

"9. I find as a fact that notwithstanding the vendor's lien note was placed with Wise by Cecil solely as collateral to secure Cecil's indebtedness to Wise evidenced by five notes, the said Wise had not instituted any proceeding to foreclose the collateral lien on said vendor's lien note, and that, as between Cecil and Wise, Cecil remained the owner thereof subject to Wise's collateral lien thereon and same was subject thereto at the time Wise received the deed from John Porter, trustee.

"Conclusion of Law

"(a) I conclude as a matter of law that Cecil's obligation to Wise was not canceled and satisfied by force of any agreement between the parties, and that Wise's act in crediting the notes evidencing the indebtedness from Cecil to Wise was unauthorized.

"(b) I conclude as a matter of law that, between Wise and Cecil, Cecil remained the owner of the vendor's lien note held by Wise as collateral to secure Cecil's indebtedness, and that by virtue of the facts hereinabove found the use of such note by Wise as the consideration for the acquisition of the lands in controversy resulted in a substitution of security as a matter of law and impressed said lands in Wise's hands with a trust in favor of Cecil, the lands being subject to a lien similar to that which Wise held against the collateral vendor's lien note.

"(c) I conclude as a matter of law that Cecil is entitled to a judgment in this

cause, decreeing the title to said lands vested in the said Oscar Wise in trust for the said C. W. Cecil, subject to a lien to secure the indebtedness of Cecil to Wise amounting to $1200 as agreed in open court.

"M. S. Long
"Judge Presiding."

By various assignments of error and propositions thereunder, the appellant challenges the correctness of the different findings of fact and conclusions of law, as well as the judgment. In substance, he insists, among other things, that under the facts the court erred, first, in holding that as between Wise and Cecil, the latter remained the owner of the vendor's lien note held by Wise as collateral to secure Cecil's indebtedness (evidenced by five personal notes) to Wise, and, second, in holding that the use of the "collateral note" by Wise as consideration for the land purchased and title taken in his name resulted in the substitution as a matter of law of the land itself for the "collateral note" used as the consideration in purchasing the same, thereby impressing the land in Wise's hands with a trust in favor of Cecil, the land being thus subject to a lien similar to that held by Wise against the vendor's lien note. That the judgment entered pursuant to such findings and undisputed facts is erroneous and unwarranted by the record.

Each of these assignments is supported by reference to alleged undisputed facts and findings by the trial court. The appellant seeks to have the judgment reversed and rendered in his favor and in the alternative, a remand.

A careful consideration of this record convinces us that the material undisputed facts, plus those found by the trial court on sufficient testimony, do not sustain the appellant's contentions but are of the opposite effect, sustaining the judgment of the trial court. The appellee seeks to sustain this judgment by a proposition to the effect that "Since he (Cecil) was the undoubted owner of the vendor's lien note used by Wise in the purchase of the land, subject to the lien thereon in favor of Wise on account of the then existing indebtedness between Wise and Cecil, the use of such note in the purchase of the land gave rise to a trust in Cecil's favor; the transaction stated constituting merely a substitution of the land for the note."

The record discloses but little, if any, controversy about the controlling facts in this case. There is no dispute in the record that Cecil bought from Wise a stock of merchandise situated in Moran, by reason of which Cecil became indebted to Wise (and balance thereof at trial was about $1,200). Later, when Cecil desired to remove the remainder of the stock to Abilene, he gave Wise additional security by placing with Wise as collateral for (five) notes previously executed to him the vendor's lien note dated April 2, 1928, formerly executed by W. A. Stagner payable to the order of J. M. Chaney in the amount of $1600 and which had been assigned to Cecil by Chaney, and which was indorsed by Cecil as collateral in this language: "C. W. Cecil with recourse as collateral for series of five notes." This $1,600 note is referred to herein as the "collateral note."

The land securing the vendor's lien note subsequently became the property of Miss Neil Mills who was later adjudged a bankrupt. John Porter, the trustee in bankruptcy, advertised the land for sale, free of liens and encumbrances. It was so sold. Wise, the holder of the vendor's lien note in the meantime filed his claim in the bankruptcy court predicating the same on the vendor's lien note held by him as collateral. When Porter, the trustee, sold the land in due course of a bankruptcy proceeding, Wise purchased the land, using the vendor's lien note so held by him as security (or $1,000 thereof) as the medium by which such consideration was paid. It is not claimed by anyone that at the time of such purchase by Wise he had theretofore foreclosed his collateral lien upon the vendor's lien note, and there is no evidence of any divestiture of the complete legal title to the vendor's lien note which reposed at all times in the plaintiff Cecil.

Cecil admitted upon the trial that he agreed that Wise could use this collateral vendor's lien note in the purchase of the land from the trustee in bankruptcy or from the bankruptcy court. Therefore, we are determining rights originating in a resulting trust as contradistinguished from those arising out of a constructive trust.

Further, the trial court found that, "While such use of the vendor's lien note held by Wise as collateral was with Cecil's consent, nevertheless, there was no agreement between Cecil and Wise whereby

Wise agreed to cancel the debt and obligation of Cecil to Wise." It is upon this simple state of facts that the appellee predicates his contention that the use of the "collateral note" in the purchase of the land gave rise to a trust in his favor. That the transaction constituted merely a substitution of the land as collateral security in the place of the note which to that date was the recognized collateral security.

The undisputed facts favorable to Cecil, plus the disputed ones resolved by the court in his favor, warrant the judgment in his behalf upon well recognized principles of law and equity. Such rule is stated in Pomeroy on Equity Jurisprudence, 4th Ed., Vol. 3, p. 2347, sec. 1037, as follows: "In pursuance of the ancient equitable principle that the beneficial estate follows consideration and attaches to the party from whom the consideration comes, the doctrine is settled in England and in a great majority of the American states, that where property is purchased and the conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him. In order that this effect may be produced, however, it is absolutely indispensable that the payment should be actually made by the beneficiary, B, or that an absolute obligation to pay should be incurred by him, as a part of the original transaction of purchase, at or before the time of the conveyance; no subsequent and entirely independent conduct, intervention, or payment on his part would raise any resulting trust."

For further statement and discussion of the rule see sec. 1038, same author, 65 C.J. p. 386, sec. 155; Vol. 1 Perry on Trusts, 6th Ed., sec. 26.

In principle, the opinion in Jackson v. Reed, Tex.Civ.App., 249 S.W. 529, 530, is in point here. The facts are strongly analogous and sufficiently appear in the following excerpt of the holding: "The court was in error in instructing a verdict for the defendant, upon the facts as hereinbefore stated. The Erwin notes were pledged to Reed as collateral to further secure the payment of Jackson's notes. Reed was authorized to bring suit against Erwin on these collateral notes, to obtain judgment thereon for the amount of such notes, principal and interest, and the foreclosure of the vendor's lien. He was also authorized to purchase the lots at sheriff's sale, sold under an order of sale by virtue of such judgment; *but, in purchasing the lots, he took title thereto in trust for the benefit of Jackson, the pledgor. The effect of Reed's judgment against Erwin was to foreclose Erwin's equity of redemption. The lots, when purchased by Reed, were substituted for the Erwin notes, and such judgment in no wise changed the relation of trustee and cestui que trust between Jackson and Reed as to the Erwin property.* Reed not only had the right to purchase at the sheriff's sale, but it was his duty to do so to prevent the property from being sacrificed. His bid for the property at such sale would not be charged against him on the indebtedness of the pledgor, but only so much as he might realize from the sale of the property fairly made would be thus charged." (Italics ours)

This court would not be warranted in setting at naught the trial court's conclusion rejecting Wise's contention that he had an arrangement with Cecil which contemplated the cancellation of Cecil's indebtedness to him at the time he appropriated the note as consideration for the purchase price of the lands conveyed him by the trustee in bankruptcy. The same is true of the trial court's conclusion that Cecil was not estopped to assert the rights contended for in this suit.

And in any event, it was the duty of the pledgee Wise to protect the pledgor to the extent that the security should not be sacrificed.

We have given careful consideration to the various assignments of error but our interpretation of the fact elements in the case render inapplicable the authorities cited and relied upon by appellant in his well prepared brief. A more detailed discussion of the testimony would serve no useful purpose and that is true with reference to appellant's authorities.

Believing that the questions discussed are controlling and that the judgment should be affirmed, it is so ordered.

### On Rehearing.

The appellant has made a very able motion for rehearing in this cause. The same has been given most careful attention by this court. A re-examination of the numerous points raised still leaves this court with the conviction that the appeal in the

**240**

main was properly disposed of by our original opinion. The controlling propositions are given some additional discussion.

The respects wherein the record upon this appeal differ from those on the former appeal, as pointed out by the appellant, are not believed to be of any controlling importance.

If the contentions of Wise be correct, then prior to the purchase of the land by him from the trustee in bankruptcy his former relations with Cecil had been changed. Cecil's five notes to Wise had been discharged in consideration of the latter becoming sole and unconditional owner of the note which had theretofore been held only as collateral security for the five notes.

The trial court found against this contention. The court found that "there was no agreement between Cecil and Wise whereby Wise agreed to cancel the debt and obligation of Cecil to Wise."

The court further found that Wise bought the land "to protect himself" and that with Cecil's consent Wise used the collateral note as he did. The amount of the note (unpaid balance) was in round numbers $1,200. The debt of Cecil owing to Wise for which the $1,200 vendor's lien note was security was in round numbers $1,000. Absent any agreement Wise owned no part of the $1,200 note. True he had the right to collect it but he had no right to discharge the note for less than the full amount due. He had no right to discharge the lien which secured the note upon receipt of less than the full amount of the note. He proved the note (undoubtedly an act of ownership) as a claim against the bankruptcy estate. He thereby purported to clothe the bankruptcy court with jurisdiction to credit the sale price of the property as part payment on the note. Whether or not the $1,200 note was a debt of the bankrupt, the record, so far as we have ascertained, does not show. That, however, is of no controlling importance. If it was a debt of the bankrupt estate, then the act of Wise in filing a claim upon it constituted an invocation of the jurisdiction of the court to discharge the debt by payment of less than the amount due. It would be immaterial that the original note, and instead only a copy, was attached to the claim as filed. In either event, the note was discharged without the payment of the amount promised. If the amount of the note was not a debt against the bankrupt's estate, a

matter dependent upon whether or not the bankrupt had assumed its payment, nevertheless the act of Wise in filing a claim upon it was an invitation to the court to discharge the lien for whatever amount Wise, or anyone else, should bid for the land. In any case Wise so dealt with the $1,200 note and the lien securing same, that unless excused by the consent of Cecil constituted a conversion of Cecil's property.

The findings do not, in our opinion, show that Cecil was a party to the bankruptcy proceeding. Notice of "advertising said land for sale" which the court found that Cecil had, is not the same thing, we think, as notice that Cecil had submitted himself, or had legally been subjected, to the jurisdiction of the bankruptcy court to adjudge that the land be sold free and clear of all liens and encumbrances. The court makes no findings of the legal equivalent of facts to show that Cecil was duly cited to show cause why the court should not adjudge that the land be sold free and clear of liens, etc.

However, the only materiality of the question whether Cecil was a party to the bankruptcy proceeding would be as an evidentiary fact. If full effect be given to the finding that Wise used the collateral note as he did with the consent of Cecil, that is by no means conclusive that the land was taken by Wise free of any trust in favor of Cecil. Cecil was unable to protect his interest by purchasing the land. In any material sense he did take the land in lieu of the lien, if not in discharge of the debt secured by the lien. The purchase of the land cost Wise nothing except the $30 exacted of him by way of advance of cost. In the absence of any showing that Wise became the owner of the vendor's lien note, the acceptance by him of a conveyance of the land in discharge of the note and/or lien was tantamount to purchasing the land with Cecil's property, which affords a familiar example of a trust.

By certain assignments, and especially the tenth and eleventh, the appellant challenges certain phases of the trial court's judgment. Based upon the conclusions of fact and general conclusions of law, the trial court decreed in part as follows:

"It is, therefore, ordered, adjudged and decreed by the court that the title and ownership of the north one half of section No. 634, Cert. No. 487, Block D, John H. Gibson original Grantee, Yoakum County,

Texas * * be and it hereby is adjudged to be vested in the plaintiff C. W. Cecil, subject only to the lien hereinafter set forth.

"It is further ordered, adjudged and decreed by the court that the legal title to said land as hereinbefore vested in the defendant Oscar Wise (presumably by the sale effected through the trustee in bankruptcy) at the time of filing of this suit was in trust for the use and benefit of plaintiff C. W. Cecil, and that there is adjudged herein in favor of defendant Oscar Wise, a lien upon said land and all interest of C. W. Cecil therein, to secure the payment to said Oscar Wise of the sum of $1200 with interest thereon from this date at the rate of 8 per cent per annum.

*"It is further ordered, adjudged and decreed by the court that the legal title to said land shall remain in the said Oscar Wise pending payment, satisfaction and discharge of the lien indebtedness herein adjudged in favor of the said Oscar Wise and that upon such payment and satisfaction of said lien indebtedness the legal title to said land shall become vested in the plaintiff C. W. Cecil."* (Italics ours)

The italicized portion of the judgment is excepted to as indefinite, uncertain and without support in the pleadings and that by reason threof "said cause should be reversed and rendered, or at least reversed and remanded, or said judgment should be corrected."

In response to these assignments we have concluded that the judgment should be reformed or corrected as prayed for. In sustaining this contention it is ordered that the above quoted portion of the judgment be made to read as follows: It is, therefore, ordered, adjudged and decreed by the court that the title and ownership of the North one half of Section 634, Cert. No. 487, Block D, John H. Gibson original grantee, Yoakum County, Texas, containing 320 acres, more or less be and it hereby is adjudged to be vested in the plaintiff C. W. Cecil, subject only to the lien hereinabove set forth; that there is adjudged herein in favor of the defendant Oscar Wise a lien upon said land and all interest of C. W. Cecil therein to secure the payment to said Oscar Wise of the sum of $1200 with interest thereon from June, 4, 1938, until paid, at the rate of 8 per cent per annum, together with a foreclosure of said lien upon said land and interest in favor of said Oscar Wise; and it is ordered and adjudged that

said Wise have his order of sale to enforce this judgment, and that such order of sale shall have all the force and effect of a writ of possession as between the parties to this foreclosure and any person claiming under the defendant to such suit by any right acquired pending the same, as provided by law.

To the extent that appellant's assignments have been sustained by virtue of the above reformation or correction of the judgment, the appellant's motion for rehearing is granted. In all other respects the original judgment of this court affirming the judgment of the trial court is re-affirmed as per our original opinion of date July 7, 1939, as supplemented by what has been written herein in response to the appellant's motion for rehearing.

Under the present disposition of the case the appellee is adjudged to pay the costs of this appeal.