LIFEMARK CORPORATION, Appellant,

v.

William R. MERRITT, et al., Appellees.

No. B14-82-461CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 2, 1983.

Rehearing Denied July 7, 1983.

Philip P. Sudan, Jr., Lori D. Stiffler, Ryan & Shoss, Houston, for appellant.

Douglas Gelo, El Paso, for appellees.

Before PAUL PRESSLER, ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a refusal by the trial court to order a post-judgment turnover by the appellees of their residence and homestead in satisfaction of a default judgment on a $20,000.00 promissory note. In an application for turnover of assets pursuant to Tex.Rev.Civ.Stat.Ann. art. 3827a (Vernon Supp.1982–1983), appellant alleged that it held a purchase money lien on the appellees' El Paso home, and alternatively that a resulting or constructive trust was created for the benefit of the appellant. The court below refused to hold that appellant held a purchase money lien or that a resulting trust was created by the acts of the parties. Appellant bases its appeal on six alleged points of error. We find no error in the judgment below, and therefore overrule all points of error alleged and affirm the judgment of the trial court.

The record reflects that appellant, a Houston-based corporation, is in the business of hospital management, owning and managing a number of hospitals throughout the country, including Texas. Appellee William Merritt was employed by appellant in 1980, and was working for appellant in

Houston, Texas. In April 1980, Mr. Merritt was transferred by appellant from Houston to El Paso to work in one of appellant's hospitals. At the time of the transfer, appellant loaned the Merritts $20,000.00, and the Merritts executed a promissory note payable to appellant in the principal sum of $20,000.00. Although appellant, at the time of the loan, placed no restrictions on the use of the funds, the purpose of the loan was to assist Mr. Merritt in relocating his employment to El Paso, and to reimburse him for expenses incurred on behalf of appellant. This loan is referred to in the trade of hospital management as a "bridge loan". The Merritts executed a deed of trust in favor of appellant on their Houston home, even though at the time of the execution of the deed of trust the Merritts maintained the Houston home as their residence and homestead. Thereafter, the Merritts sold their Houston home and moved to El Paso where they used some of the proceeds of the loan and purchased the El Paso property in question. Since purchasing the El Paso property, the Merritts have continuously occupied it as their residence and homestead.

In its first point of error, appellant contends that the trial court erred in refusing to order a turnover of the El Paso property because the property was exempt from forced sale under the homestead exemption. The appellant bases its contention on the erroneous conclusion that it furnished purchase money to the appellees. The basis for the appellees' homestead exemption is the Texas Constitution, which provides:

> The homestead of a family, or of a single adult person, shall be, and *is hereby protected from forced sale, for the payment of all debts except for* the [1] *purchase money thereof,* or a part of such purchase money, the [2] *taxes due thereon or for* [3] *work and material used in constructing improvements thereon,* and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a

sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. *No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor,* or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption. Tex. Const. art. XVI, § 50 (Emphasis added).

The unequivocal language of the constitution exempting purchase money, taxes, and improvements from homestead protection is reiterated in Tex.Rev.Civ.Stat.Ann. art. 3839 (Vernon 1966), and clearly states that:

The exemption of the homestead provided for in this title *shall not apply where the debt is due* :

1. *For the purchase money* of such homestead or a part of such purchase money.

2. For taxes due thereon.

3. For work and material used in constructing improvements thereon; but in this last case such work and material must have been contracted for in writing, and the consent of the wife, if there be one, must have been given in the same manner as is by law required in making a sale and conveyance of the homestead. Const. art. 16, sec. 50. (Emphasis added).

Article XVI is augmented by Tex.Rev.Civ. Stat.Ann. art. 3835 (Vernon Supp.1982–1983), which adds:

The homestead of a family or a single, adult person, not a constituent of a family, and a lot or lots held for the purposes of sepulchre of a family or a single, adult person, not a constituent of a family, are exempt from attachment, execution and every type of forced sale for the payment of debts, except for encumbrances properly fixed thereon.

It is therefore quite clear that the homestead is exempt from attachment, execution, and every type of forced sale for the payment of debts, except for encumbrances properly fixed thereon, and that a claim of homestead must yield to the constitutionally protected and superior right of one furnishing all or part of the purchase money for the homestead.

█ The facts conclusively establish that appellant has no purchase money lien. The appellant offered no evidence of a lien properly fixed on the El Paso property to secure purchase money. There is no evidence of any filing, recordation or recitation of an agreement in writing securing payment of the loan with the El Paso property. In fact, the evidence shows that at the time the loan was made to appellees they executed a deed of trust to their Houston homestead securing the loan. The pertinent part of the REAL ESTATE LIEN NOTE reads as follows:

Payment is secured by a Deed of Trust of even date herewith, executed by the Makers hereof, to Larry W. Prescott, Trustee, upon the following described real property, to-wit:

Lot 21, Block 6, 51 Glenshannon Addition, a/k/a 10735 Shannon Hills, Houston, Texas.

Obviously, the trust deed and lien with which appellant secured its loan and promissory note were void. Tex. Const. art. XVI, § 50; *Cade v. Dudney,* 379 S.W.2d 370 (Tex.Civ.App.—Eastland 1964, writ ref'd n.r.e.). It is particularly important to note that appellant secured the loan to appellees with a deed of trust to appellees' Houston home, because now on appeal appellant claims to have a purchase money lien on the appellees' El Paso property. It is appellant's mistaken contention that merely because it loaned money to the appellees, and the appellees subsequently purchased a home with a portion of that money, that appellant has a purchase money lien on the property. Appellant is attempting to elevate itself to the status of a vendor which it

is not. The constitutional exemption afforded the El Paso property, from forced sale in satisfaction of a general debt, is absolute. Article 3835 further provides that any encumbrances on the homestead must be "properly fixed thereon". Appellant has failed to meet its burden of proving the existence of a valid purchase money lien. This is simply a loan, and nothing more. Consequently, appellant's first point of error is without merit and overruled.

In its second and third points of error, appellant argues that the trial court erred in concluding that the Merritts' El Paso property is their homestead, because there is no evidence or insufficient evidence to support that conclusion. We disagree.

■ A homestead is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith. *Gann v. Montgomery,* 210 S.W.2d 255, 258 (Tex. Civ.App.—Fort Worth 1948, writ ref'd n.r. e.). The possession and use of real estate by one who owns it, and who, with his family, resides upon it makes it the homestead of the family in law and in fact. *Garrard v. Henderson,* 209 S.W.2d 225, 230 (Tex.Civ.App.—Dallas 1948, no writ). Moreover, the courts have always given a liberal construction to the Constitution and Statutes to protect homestead rights. *Tolman v. Overstreet,* 590 S.W.2d 635, 637 (Tex.Civ.App.—Tyler 1979, no writ). Our Supreme Court has declared that:

> The rule that homestead laws are to be liberally construed to effectuate their beneficient purpose is one of general acceptation. [cites omitted]. There are, of course, authorities to the contrary, but this court at an early date (1852) declared the rule stated to be the one applicable in this state. *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35, 35 (1929).

■ The initial burden of establishing that property is homestead property is on the claimant of the protection. *See Burk Royalty Company v. Riley,* 475 S.W.2d 566, 568 (Tex.1972); *Gill v. Quinn,* 613 S.W.2d 324, 326 (Tex.Civ.App.—Eastland 1981, no

writ). Once the claimant has established his homestead, the burden shifts to the creditor to disprove its continued existence. *Chalk v. Daggett,* 257 S.W. 228, 232 (Tex. Comm'n App.1924, judgment adopted). The burden amounts to a presumption that the homestead continues to exist until its termination is proved. *Sullivan v. Barnett,* 471 S.W.2d 39, 43 (Tex.1971). This court, in *Pace v. McEwen,* 617 S.W.2d 816 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ), stated that the homestead claimant has the burden of proof on the issue of homestead status; however this does not mean that the claimant has the burden of proof for all homestead issues. In *Pace,* the claimant failed to meet the initial burden of establishing a homestead because there was sufficient evidence to support a finding that the funds used to acquire the property had been fraudulently obtained by the claimant. Investment in a home cannot be used as a shelter for ill-gotten gains. *Baucum v. Texam Oil Corp.,* 423 S.W.2d 434, 442 (Tex. Civ.App.—El Paso 1967, writ ref'd n.r.e.). For a discussion on homestead, see generally McKnight, *Homestead: Designation and Extent,* 36 S.W.L.J. 121 (1982).

■ It is well settled in this state that in order to establish homestead rights, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Prince v. North State Bank,* 484 S.W.2d 405, 409 (Tex.Civ. App.—Amarillo 1972, writ ref'd n.r.e.). Concerning the usage and intent on the part of the appellees to claim the El Paso property as their homestead, Mr. Merritt gave the following testimony:

Q. (Mr. Sudan [appellant's attorney] continuing) Now, let me show you what has been marked as Plaintiff's Exhibit 8, and ask you if it is a copy of the deed you received at or shortly after the closing on your house in El Paso?

A. Yes, it is.

MR. SUDAN: We offer Plaintiff's Exhibit 8, Your Honor:

MR. GELO: [appellees' attorney] No objections, Your Honor.

THE COURT: Let it be admitted. (At this time Plaintiff's Exhibit 8 was received into evidence by the Court and appears under a separate folder made a part of this Statement of Facts)

Q. (Mr. Sudan continuing) Is that the property you are living in now that is reflected on Plaintiff's Exhibit 8?

A. Yes.

Q. That you are claiming is your homestead?

A. It is my homestead.

In response to questions by Mr. Gelo, the testimony of Mr. Merritt reflects the following:

Q. How many children do you have?

A. I have two boys.

Q. Where do they live and what are their ages?

A. William, 13; and Jason, seven, and both live in El Paso at 6309 Falling Star.

Q. What county is that located in?

A. El Paso County.

Q. And have they lived there continuously since on or about May 13th, 1980, with you and your wife?

A. Yes, sir.

Q. During that time have you had any other property that was used as your home?

A. No, sir.

Q. That you lived in?

A. No, sir.

The general rule is that the testimony of interested witnesses, such as parties to the suit, merely raises a fact issue to be determined by the jury. *Simmonds v. St. Louis, B & M Ry.,* 127 Tex. 23, 91 S.W.2d 332 (1936). However, this rule will not be applied when the testimony of the interested witness is clear, direct and positive and there are no circumstances in the evidence tending to be inconsistent or in conflict with the uncorroborated testimony. *Great Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). It should also be noted that investigation of

intention need not be made when the land is actually put to homestead uses. Such actual use of the land is the most satisfactory and convincing evidence of intention. *Spence v. Spence,* 455 S.W.2d 365, 368 (Tex. Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *Clark v. Salinas,* 626 S.W.2d 118 (Tex.Civ.App.—Corpus Christi 1981), *writ refused n.r.e.,* 628 S.W.2d 51 (Tex. 1982).

In deciding the legal sufficiency challenge of appellant, we must consider only the evidence and the inferences tending to support the trial court's findings in support of the challenged portion of the judgment and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We have considered all the evidence (including the evidence that the appellees owned, possessed, resided on and used the property) under the appropriate legal standard, and conclude that there is ample evidence of probative force to establish that the property in question is the appellees' homestead. *See Braden Steel Corporation v. McClure,* 603 S.W.2d 288 (Tex.Civ.App.—Amarillo, 1980, no writ). In deciding appellant's factual sufficiency attack, we must consider all of the evidence to ascertain if findings in support of the challenged portion of the judgment are so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304, 305 (1960). In *Pace,* we stated that the burden of proof on the issue of homestead status is on the homestead claimant. *See also Savell v. Flint,* 347 S.W.2d 24 (Tex.Civ.App.— Eastland 1961, writ ref'd n.r.e.); *Hilliard v. Home Builders Supply Company,* 399 S.W.2d 198 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.). Appellant's reliance on *Pace* is misapplied because of the significant factual differences. In the case at bar, findings of fact and conclusions of law were filed. In *Pace,* no findings of fact or conclusions of law were requested or filed. In both cases, the only evidence offered to establish the homestead claim was that of the homestead claimant himself. However,

unlike the case before us, in *Pace* the claimant's testimony was not free from contradiction. No doubt, it is well settled in Texas that in order to establish homestead rights there must be proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead. Intention in good faith to occupy the premises is the prime factor in establishing the homestead status of property, and in order to create the homestead right there must be the combination of both overt acts of homestead occupancy and the intention to dedicate the property to homestead usage. As a general rule, evidence given by an interested witness is not conclusive although uncontradicted, and presents an issue of fact for determination by the trier of the facts. We find that there is a fact issue presented by the evidence regarding the concurrence of the usage and intention to claim the property as a part of the rural homestead. The trial court resolved such fact issue against the appellant and, in view of all the circumstances, we believe the evidence sufficiently supports the trial court's findings against the no evidence and insufficient evidence contentions. For these reasons, we overrule appellant's second and third points of error.

 In its fourth point of error, appellant alleges that the trial court erred in refusing to order a turnover of the El Paso property because the appellees hold the El Paso property in a resulting trust for appellant to the extent that appellant furnished the purchase money for the property. The appellant's argument is without any support in the existing law. In describing a resulting trust, our Supreme Court has stated:

> A resulting trust arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner. The trust arises out of the transaction and must arise *at the time when the title passes.*

*Cohrs v. Scott,* 161 Tex. 111, 338 S.W.2d 127, 130 (1960).

A resulting trust is one arising "where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." RESTATEMENT (SECOND) OF TRUSTS § 404 (1957).

In discussing resulting trusts, under the topic of Loan by Trust Claimant, BOGERT ON TRUSTS § 455 (1977) states that:

> [W]here the *grantee* in the deed *borrows* the money and the lender seeks a resulting trust on account of the loan and the use of the proceeds of the loan to pay for the land. Thus A has contracted to buy land of X, but A does not have the funds to pay the price. A borrows the money from B and gives B his note. A thereafter pays X, the grantor, the very coins or bills or credit which he received from B, and gets a deed running from X to A. When A does not pay his loan on its maturity, B seeks a decree that there is a resulting trust in his favor in the land. It is plain that no such decree should be given. The consideration paid by A, the grantee in the deed, was his absolute property. It had become such by virtue of the loan from B. *That this money or credit formerly belonged to B is no ground for obtaining a resulting trust.* He must prove that the consideration paid to the grantor was at the time it was paid to the grantor the property of B. This he cannot do. *The cases universally deny B the benefit of a resulting trust* which would enable him to gain the advantage of any increase in the value of the property and acquire superiority over mortgages and other liens which have attached since the deed was given to A. B can, of course, get a judgment on his note against A and collect the judgment out of the land in question, but his claim will then be inferior to claims which may have arisen between the time of the deed

to A and the judgment in the action on the note. (Emphasis added).

The universal law in this regard is no different in Texas. In *Jordan v. Jordan,* 154 S.W. 359 (Tex.Civ.App.—Texarkana 1913, writ ref'd), the court clearly held that:

No resulting trust exists in favor of one who pays the purchase money by way of mere loan to another; the conveyance being taken in the name of the borrower. *Id.* at 361.

It was also clearly established in *Jordan* that a mere lender of money used to purchase land conveyed to the borrower has no lien upon the land.

The following testimony was elicited from Mr. Merritt:

Q. At the time you loaned—or borrowed $20,000 from your employer did you express to them your intent to give them some interest in your El Paso home as security for that loan?

A. No, sir.

Q. Did they ever request that as some type of security?

A. No, sir.

Q. During the time that loan went unpaid and prior to a judgment in late 1981 did anyone from Lifemark ever tell you that they had an interest in your home in El Paso or that you were holding that home for their benefit?

A. No, sir.

Q. Are there any documents on file that would relate to that matter that we have just been discussing.

A. No, sir.

In *Aaron Frank Clothing Co. v. Deegan,* 204 S.W. 471 (Tex.Civ.App.—San Antonio 1918, writ ref'd), the court wrote:

The evidence shows nothing but a plain ordinary case of lending a man money, which he invested in land and improvements. Neither allegations nor proof show any kind of trust in the property or lien of any description thereon in favor of appellant. There was no agreement to give a lien on the property, but the money was loaned to J.L. Deegan not to buy land for appellant, but to buy land for himself, and it was bought for himself and the improvements made for himself. As said by Perry, in his work on Trusts (section 133):

"There must be an actual payment from a man's own money, or what is equivalent to payment from his own money, to create a resulting trust. And the money must be advanced and paid in the character of a purchaser; for *if one pay the purchase money by way of loan for another, and the conveyance is taken to the other, no trust will result to the one who thus pays the purchase money."*

The particular land was in view when the money was loaned and became the property of Deegan. *The suit is founded on a contract to repay the money. "Resulting trusts are not creative of contract. They arise from the acts of the parties, and not from their agreement." Boehl v. Wadgymar,* 54 Tex. 589. In order to create a resulting trust, the payment must be made at time of purchase. *Oury v. Saunders,* 77 Tex. 278, 13 S.W. 1030. *In the case of Ruhl v. Kauffman, 65 Tex. 723, Kauffman loaned Ruhl $5,000, with a view that the latter should purchase a certain lot. The lot was purchased, deed being made to Ruhl. There was no agreement that Kauffman should have a lien, and the court held the relation of vendor and vendee was not created, and that Kauffman had no lien on the property to secure his debt. Id.* at 471. (Emphasis added.)

Also, "one who lends money on an unsecured promissory note has no equitable lien upon property improved, preserved or purchased by the borrower, with the funds thus obtained, is, we think, elementary." *Batson v. First National Bank of Normangee,* 60 S.W.2d 551, 553 (Tex.Civ.App.—Waco 1933, writ dism'd). Therefore, we are of the opinion that the Merritts purchased the El Paso property for themselves and as their own, and that the money that went to pay for a part of it was obtained by the appellees from the appellant as a mere loan, and nothing more.

The date of the transaction is important when trying to impose a resulting trust for

purchase money, because it must arise at the time of the passage of title, if at all. In *Morrison v. Farmer,* 147 Tex. 122, 213 S.W.2d 813, 815 (1948), the Texas Supreme Court unequivocally wrote:

A resulting trust arises by operation of law when title is conveyed to one person but the purchase price is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner. *The trust arises out of the transaction and must arise at the time when the title passes.* (Emphasis added).

This rule was propounded as early as 1883 by our Supreme Court in *Gardner v. Randell,* 70 Tex. 453, 7 S.W. 781 (1888), wherein the court stated:

Resulting trusts stand upon a different footing. There the law creates a trust in favor of the party who pays the consideration by which the title has been acquired in the name of another; and *the rule is that the consideration must be paid, and the trust must arise at the very time of the transaction. Id.* 7 S.W. at 782. (Emphasis added).

This rule was also reiterated in *Klein v. Sibley,* 203 S.W.2d 239, 243 (Tex.Civ.App.—San Antonio 1947, no writ), wherein the court quoted from the Supreme Court's opinion in *Gardner. See also Wise v. Cecil,* 135 S.W.2d 235 (Tex.Civ.App.—Eastland 1940, writ ref'd); *Tolle v. Sawtelle,* 246 S.W.2d 916 (Tex.Civ.App.—Eastland 1952, writ ref'd).

Additionally, for any clear understanding of purchase-money resulting trusts, it must be constantly remembered that the ultimate payor of the consideration for the property in question, as between the parties to the suit, is the only party who may be entitled to a resulting trust. *See* 28 POF 2d 464 (1981). In conformity with this rule, a resulting trust is not created in favor of one who advances money as a loan for the purchase of property. RESTATEMENT (SECOND) OF TRUSTS § 445 (1959). On the contrary, where there is a loan a resulting trust will arise in favor of the borrower

of the purchase money, if he is not the named transferee of the property. RESTATEMENT (SECOND) OF TRUSTS §§ 448, 451, 456 (1959).

Section 445 is very clear:

§ 445. Where Payor Pays Purchase Price as a Loan to the Transferee

Where a transfer of property is made to one person and the purchase price is advanced by another as a loan to the transferee, no resulting trust arises. RESTATEMENT (SECOND) OF TRUSTS § 445 (1959). *See also* 5 A.W. Scott, THE LAW OF TRUSTS § 445 (3d ed 1967); 57 TEX.JUR.2d § 40 (1964).

■ In the case at bar, the evidence shows that at the time of the loan by the appellant to the appellees, a promissory note and deed of trust were executed, in effect mortgaging appellees' Houston homestead. Mr. Merritt's intent was to use the proceeds of the loan to relocate his family in El Paso, allow him time to sell his Houston dwelling, and to attempt to finance the move to El Paso. The record clearly reflects that it was appellant's intent to secure the loan with a deed of trust (which was void) on the appellees' Houston dwelling. At the time that title to the El Paso property passed, appellant did not even have knowledge of the transaction. Therefore, it could not have intended to retain any interest in a transaction it was not even aware of. For these reasons, the trial court below properly ruled when it refused to impose a resulting trust against appellees' homestead, and any other result would have circumvented the express provisions of Article 16, § 50 of the Constitution, and Article 3835.

Accordingly, there is no resulting trust and appellant's fourth point of error is overruled.

■ In its fifth and sixth points of error, appellant contends that the trial court erred in not awarding it more in attorneys' fees. In short, appellant argues that the court abused its discretion in not awarding the entire amount of attorneys' fees requested. These points are without merit.

In fact, appellant has not cited us to any case law in support of this proposition. Absent an abuse of discretion, the court's determination of reasonable attorneys' fees should not be disturbed.

Further, appellant ignores the language in the promissory note which provides for liquidated attorneys' fees. In said note, appellees agreed to pay 10% of the amount of the loan ($20,000.00) in the event appellant has to resort to any judicial proceedings in order to collect payment of the note. A suit pursuant to article 3827a is a judicial proceeding within the meaning of that term. Appellant has been allowed to recover attorneys' fees in excess of the amount contracted for in the promissory note. It should not now be heard to complain that sufficient fees have not been awarded. No error has been shown; appellant's alleged points five and six are overruled.

The judgment is affirmed.