William M. CRUME, et al, Appellants,

v.

Susan B. SMITH, et al, Appellees.

No. 1461.

Court of Civil Appeals of Texas, Tyler.

July 30, 1981.

Rehearing Denied Aug. 20, 1981.

A. D. Henderson, Palestine, for appellants.

Jerry Bain, Bain, Files, Allen & Hurst, Tyler, John O. Davis, Palestine, for appellees.

McKAY, Justice.

This is an appeal from the judgment in a partition suit involving 252.87 acres of land in Anderson County, Texas.

The property in question was owned by J. R. Crume; upon his death in 1925 the property was inherited by Crume's wife Mollie, their four daughters (appellees' predecessors) and one son (appellants' predecessor). In 1929, Mollie Crume and her five children conveyed a 209/240th interest in the land by general warranty deed (first deed) to T. W. Wright, cousin of Mollie Crume, in which consideration was recited to be

> "THREE HUNDRED & EIGHTY SIX DOLLARS [$386] to us cash in hand paid . . . and the balance of NINE HUNDRED DOLLARS [$900] secured to be paid by the four certain vendor's lien notes . . . payable to Mollie Crume . . ."

A vendor's lien was expressly retained in the deed to secure payment of the notes.

It is undisputed that the four notes were never paid by T. W. Wright. According to letters from T. W. Wright to Mollie Crume

admitted into evidence at trial, neither was the cash consideration of $386 paid to the grantors.[1] In 1930, due to his inability to pay the purchase money, T. W. Wright executed a deed (second deed) reconveying the property to Mollie Crume and her son M. B. Crume only, thereby depriving the four daughters of any legal title to the property.

The heirs of the four daughters of J. R. Crume and Mollie Crume filed this partition suit against the heirs of M. B. Crume seeking to establish their interest in the Anderson County property computed from the interests their ancestors held prior to the sale to Wright. Trial was before the court who made findings of fact that a vendor's lien had been reserved in the first deed, that superior title to the property was retained by Mollie Crume and her five children and that consideration for the conveyance to Wright had failed. In its conclusions of law, the trial court declared that (1) Mollie Crume and her five children owned superior legal title to the property in question by virtue of the vendor's lien retained in the first deed; (2) consideration for the conveyance was not paid and therefore failed; (3) the deed from T. W. Wright to Mollie Crume and her son M. B. Crume did not divest the grantors in the original deed of their superior legal title retained by virtue of the vendor's lien; (4) any title which may have accrued to Mollie Crume and M. B. Crume under the deed from T. W. Wright would be held in constructive or resulting trust and not full legal title; and (5) the grantors in the original deed have equitable title to said property, and to prevent unjust enrichment to Mollie Crume and M. B. Crume and those claiming under them, the court would impose a constructive and/or resulting trust on the property for the benefit of plaintiffs (appellees). The trial court then partitioned the land among all the parties according to the interests

---

1. The letters from Wright to Crume, dated September 9, 1929 and January 7, 1930, are admissible without authentication as ancient documents. 23 Tex.Jur.2d *Evidence* § 267 (1961). Statements in these letters to the effect that T. W. Wright never paid the cash consideration recited in the deed and never intended to do so, but included the recital in the deed to enable him to borrow more money against the land, are admissible as admissions against interest by one under whom appellants claim title. 1A Ray, Texas Law of Evidence §§ 1172, 1122 (Texas Practice 3d ed. 1980).

held by their predecessors before the attempted sale in 1929 by impressing constructive and resulting trusts upon the property.

Appellants, who are heirs of M. B. Crume, bring six points of error. Points 1 and 4 are "no evidence" points in which these findings of fact are disputed: (1) that the grantors in the first deed retained a vendor's lien or superior title and (2) that the consideration failed as called for in that deed. The remaining points raise as error all of the trial court's conclusions of law.

■ It is first incumbent upon this court to determine whether the consideration recited in the first deed failed. The other evidentiary point concerning the retention of a vendor's lien will be considered later. As noted above, it is undisputed that the four notes payable to Mollie Crume were never paid. Furthermore, statements made in the letters from T. W. Wright to Mollie Crume, admissible under the reasoning set out in footnote 1, *supra* constitute some evidence to support the trial court's finding of failure of consideration; for example,

> Now cousin Mollie I cannot give $20 per acre for the land. All we put $20 in the deed was so we could borrow more money on it. I cannot give even $15 for it and the $386 cash payment the deed calls for is between you and me and as understanding ... Now if you will receipt me for $386 and write Mr. Swift [Palestine attorney handling the sale] we have made a deal to satisfy the $386 well will go on and close up the deal, but if you want the $386 in cash the deal is off ... [From letter dated September 9, 1929].

Also,

> Well I received a notice yesterday that I could not get a loan on the land I bought from you ... It cost me $25 to put in application to get the money for you, but they turned it down [From letter dated January 7, 1930].

In a letter written May 13, 1930, Wright evidenced his desire to reconvey the property to Mollie Crume, stating that he had paid $46 for an abstract on the land and $12.19 in taxes, but would deed back the property for $25. This evidence provided an adequate basis for the trial court's finding. Appellants' "no evidence" point is therefore overruled.

In a related point, appellants maintain that the trial court erred in making a conclusion of law that consideration was not paid because the holder of such indebtedness (Mollie Crume) agreed to a cancellation of said indebtedness and therefore appellees have no standing to raise the issue of failure of consideration. This argument is without basis in law and has no merit; accordingly it is overruled.

It having been established that the Crumes received no consideration for the property in question, we must now analyze the nature of the property interest, if any, held by the four Crume daughters upon reconveyance of the land to their mother and brother. This determination will resolve appellants' remaining points.

■ When the property was first conveyed to T. W. Wright, an express vendor's lien was included in the deed to secure payment of the notes executed to Mollie Crume. By expressly reserving a vendor's lien in a deed, the vendor retains superior title against the purchaser. *Pearson v. Teddlie*, 235 S.W.2d 757 (Tex.Civ.App.-Eastland 1950, no writ). The superior title is a security against the loss of purchase money and property; the significance of retaining superior title is explained in 58 Tex.Jur.2d *Vendor & Purchaser* § 262 (1964):

> The title is superior in the sense that the purchaser may not assert his title against the vendor unless he has paid the purchase money. It enables the vendor, *or his successor in interest*, in case of the purchaser's default in the payment of the purchase money or the performance of some other obligation, not merely to enforce a vendor's lien if one has been retained, but at his election to rescind the sale and recover the property from the purchaser *or anyone holding under him*, or to reclaim, repossess, or resell the property, under certain circumstances, without suit. (Emphasis added).

Consequently, the holder, or holders, of the present notes secured by a vendor's lien held a superior title in the property conveyed to Wright and therefore enjoyed those above-described rights against the vendee concomitant to such an interest.

In order for appellees to recover an interest in the property before us, it must be established that their ancestors retained an interest in the notes held by Mollie Crume and also that this interest survived the reconveyance of the realty to their mother and brother. As to the purchase money notes, we hold that a *resulting* trust in the notes arose for the benefit of the four daughters at the time they transferred their property interests to Wright. There is no evidence that the girls intended to make a gift of their share of the sale proceeds to their mother. In spite of the fact that their interests in the land constituted consideration for Wright's notes, the notes were placed in the name of Mollie Crume.

It is well-established in Texas jurisprudence that a resulting trust arises when the purchase money for realty is paid by one, but legal title is placed in another. *Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127, 130 (1960); *Tolle v. Sawtelles*, 246 S.W.2d 916 (Tex.Civ.App.-Eastland 1952, writ ref'd); *Ford v. Simpson*, 568 S.W.2d 468, 470 (Tex.Civ.App.-Waco 1978, no writ); *Bell v. Smith*, 532 S.W.2d 680, 684 (Tex.Civ. App.-Ft. Worth 1976, no writ). Moreover, any type of property, e. g., promissory notes, may be impressed with a resulting trust. *Allen v. Rodriguez*, 480 S.W.2d 270, 271 (Tex.Civ.App.-Austin 1972, writ ref'd n.r.e.). According to *Allen, supra,*

The basis of a resulting trust is the equitable doctrine of consideration and arises by operation of law when a party furnishes valuable consideration but does not take legal title to the property.

The evidence presented in the case before us reveals the existence of such a resulting trust in the notes held by Mollie Crume. For that reason, the daughters of Mrs. Crume were entitled to the same benefits of superior title as enjoyed by their mother, i. e., neither the purchaser *nor anyone holding*

*under him* could assert title against them unless the purchase money was paid, which it was not. We therefore affirm the trial court's finding of fact and conclusion of law that all of the original grantors retained superior title by virtue of the vendor's lien recited in the deed and hold that the appellees may reclaim their interest in the property from appellants.

Additionally, when consideration for the property failed and the reconveyance to Mollie and M. B. Crume was effected, the girls' interest in the land commensurate with the interest each owned prior to the sale to Wright was protected by the imposition of a *constructive* trust. Generally stated, a constructive trust

"is a trust which is not expressed but is imposed upon a person by a court of equity upon the ground of public policy so as to prevent him, from holding for his own benefit and advantage that which he has gained by reason of a fiduciary relation subsisting between him and those for whose benefit it is his duty to act."

*Hull v. Fitz-Gerald*, 232 S.W.2d 93, 99 (Tex. Civ.App.-Amarillo 1950) affirmed, 150 Tex. 39, 237 S.W.2d 256 (1951), citing *Cawthon v. Cochell*, 121 S.W.2d 414, 416 (Tex.Civ.App.-Amarillo 1938, writ dism'd); see *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960); 57 Tex.Jur.2d *Trusts* §§ 54 et seq. (1964). The circumstances existing in the case at bar satisfy this description.

We find ample evidence in the record to sustain the fact that Mollie Crume was acting in a fiduciary capacity with respect to her daughters' interest, first in the purchase money notes and after reconveyance, to the property itself. While it is true that fiduciary responsibilities do not necessarily accompany familial relationships, such kinship, when combined with other factors, may indicate that one is acting in a confidential capacity. For that reason, the mother-daughter relationship between Mrs. Crume and her four girls may be considered.

Certain statements made by T. W. Wright in his aforementioned letters to Mollie Crume suggest that Mrs. Crume was

operating as her daughters' agent to receive the purchase money owed for the property. For example, Mr. Wright wrote, "Now if you all understand I will pay . . . the girls part also that would make $20 per acre . . ." and "I will send you the girls part when he [Mr. Swift] gets the papers fixed up." It seems apparent that Mr. Wright believed Mrs. Crume was acting as her daughters' collection agent, even though the purchase money notes were held in her name only. It is undisputed that part of the consideration received for the notes belonged to the daughters. Furthermore, as noted above, there is no evidence that the girls intended to make a gift of their interest in the proceeds or in the property itself to their mother or brother. When viewed in toto, we believe the evidence presented was sufficient to support the trial court's conclusion that appellants' title to the property is subject to a constructive trust for the benefit of appellees.

Accordingly, the judgment of the trial court is affirmed and appellees are entitled to a partition of the land and to a recovery of their respective interests as determined by the trial court.

Affirmed.