In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-051 CV


____________________



MAGNOLIA BEND VOLUNTEER FIRE DEPARTMENT, INC., Appellant



V.



JOHN J. MCDONNELL and MONTGOMERY COUNTY 


EMERGENCY SERVICES DISTRICT NO. 5, Appellees






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 02-07-04300-CV






MEMORANDUM OPINION


 The Magnolia Bend Volunteer Fire Department, Inc. (Fire Department) sued
Montgomery County Emergency Services District No. 5 (the District) seeking the
cancellation of a warranty deed transferring certain real property from the Fire Department
to the District. The Fire Department further sought the cancellation of an assignment of
lease transferring a leasehold interest in certain other real property from it to the District.
The Fire Department also sued John McDonnell, President of the Magnolia Bend
Volunteer Fire Department, alleging breach of fiduciary duty and Homer Wilson for
conspiracy with McDonnell. 

 The District counterclaimed against the Fire Department on the basis the original
deed placing title to the real property in the Fire Department's name was constitutionally
void and seeking the imposition of a resulting trust quieting title to the property in the
District. The District further sought an order declaring it was entitled to ownership and
possession of various items of all personal property and fire equipment purchased with tax
funds, and seeking an order enjoining the Fire Department from damaging or removing
equipment. 

 Following a trial to the bench, the court found the placing of title to the real
property in the Fire Department's name was void under the Texas Constitution and that
a resulting trust existed in favor of the District. The trial court awarded title and
possession of the real property and the personal property and fire equipment to the District.
The trial court rendered a take-nothing judgment against the Fire Department on its claims
against McDonnell and Wilson. The Fire Department brings this appeal raising three
issues. The District has filed a brief as appellee. (1)

 The Fire Department claims in its first issue the evidence does not support the trial
court's finding that McDonnell did not breach his fiduciary duty. The District counters
that any error with respect to the finding was harmless because the Fire Department fails
to challenge the trial court's finding that it sustained no damages from McDonnell's
conduct. Generally, in the absence of a challenge on the finding of no damages, any error
in the findings on issues of liability are immaterial and harmless. See Tate v. Sharp, 831
S.W.2d 899, 900 (Tex. App.--Beaumont 1992, no writ)(quoting Canales v. National Union
Fire Ins. Co., 763 S.W.2d 20, 23 (Tex. App.--Corpus Christi 1988, writ denied). See also
Easley v. Castle Manor Nursing Home, 731 S.W.2d 743, 744 (Tex. App.--Dallas 1987,
no writ). Further, the Fire Department does not argue or demonstrate that the error
complained of probably caused the rendition of an improper judgment. See Tex. R. App.
P. 44.1(a)(1). Issue one is overruled.

 In issue two, the Fire Department contends the evidence does not support the trial
court's finding that the original deed placing title to the property in its name was void as
prohibited by Article 3, section 52 of the Texas Constitution, because the funds to pay for
the property and building were tax funds provided by the Montgomery County Rural Fire
Prevention District No. 5. (2) See Tex. Const. art. III, § 52. The Fire Department does not
challenge the trial court's finding that "[f]unds for the payment of the Property . . . were
provided to the Magnolia Bend VFD by the Montgomery County Rural Fire Prevention
District No. 5." Rather, the Fire Department argues the money which purchased the
property was not "given" to it, because there was a contract that in exchange for funding,
the Fire Department would provide fire suppression services for the District. Therefore,
the Fire Department contends, the payments did not violate the Texas Constitution and the
placing of title in its name was not void. 

 We first note that the Fire Department cites no authority for its position. See Tex.
R. App. P. 38.1 (h). Furthermore, the Fire Department fails to discuss all of the evidence
in asserting it is factually insufficient. When reviewing such a challenge, we must consider
all of the evidence. See Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989). The Fire Department refers only to portions of the testimony provided by Bennie
M. McKenzie, Homer Wilson, and Charlie Roe, as summarized here. McKenzie testified
the tax money was in exchange for fire suppression services and "they hired us to do that." 
Wilson's testimony indicated there was a verbal contract for services in exchange for funds
and "there was no formal written contract until 2000." Wilson further testified the money
was never given to the Fire Department to "spend it any way you want to." Roe testified
the District did not "just give" the Fire Department money, it was for their budget to
provide fire-fighting services. 

 The evidence set forth by the Fire Department does not show the funds were in
exchange for return consideration. The Fire Department does not demonstrate the
District's act--placing title to the property in its name--was in exchange for sufficient
consideration so that it was not "gratuitous." See Texas Mun. League Intergovernmental
Risk Pool v. Tex. Workers' Comp. Com'n, 74 S.W.3d 377, 383 (Tex. 2002). Issue two
is overruled.

 In its third issue, the Fire Department claims the evidence does not support the
imposition of a resulting trust on the property in favor of the District. Specifically, the
Fire Department contends first that the District did not establish it paid the purchase price
for the property; and second, that the District did not show it paid such price at the time
of the inception of the title. In support, the Fire Department refers to the fact that title to
the property passed to it on June 28, 1985, when the deed was executed; the down payment
was paid with a cashier's check purchased by the Fire Department; and that the money
received from the District was co-mingled in one account with the Fire Department's own
money. 

 The deed is void; therefore, title did not pass to the Fire Department when it was
executed. Consequently, the payments were not made "subsequent to the inception of legal
title" as the Fire Department argues. The trial court found that any "commingled" funds
were presumed to be public funds and the Fire Department does not challenge that finding. 
Regarding payment, the trial court found the District provided the funds to the Fire
Department to pay for the property. 

 The record establishes that in 1985 the District approved the purchase of the
property for a new fire station. At that meeting, the District authorized down payment on
the land. On June 28, 1985, the District wrote a check to the Fire Department for
$10,000. The District's financial report for 1986 noted as an expense for land purchase
the amount of $4,666, and as a liability a note payable for land purchase in the amount of
$27,965. The minutes of the District board in July 1986 show a motion carried to pay the
land off at approximately $25,000. On January 13, 1987, the District wrote a check to the
Fire Department in the amount of $10,000. On January 22, the District gave Check No.
469 in the amount of $20,000 to the Fire Department to pay off the land. The record
contains copies of a cashier's check from the Fire Department to the title company in June
of 1985 for the amount of $4,685.82, and two checks from the Fire Department to the
trustee for the land in the amounts of $5,462.38 and $26,704.35, dated July 1, 1986 and
January 23, 1987, respectively. Robert Burch, a member of the board of commissioners
for the District from 1985 through 1987, and a member of the Fire Department from
approximately 1983 to 1985, testified taxpayer funds provided by the District paid for the
down payment on the land, the annual payment made in 1986, and the balance paid off in
1987. We conclude there is factually sufficient evidence to support the trial court's finding
the District supplied the funds to the Fire Department to pay for the property.

 The Fire Department does not refer this court to any evidence contrary to the trial
court's findings. "A resulting trust arises by operation of law when title is conveyed to
one party, but the purchase price is paid by another. Crume v. Smith, 620 S.W.2d 212,
215 (Tex.Civ.App.--Tyler 1981, no writ)." Masterson v. Hogue, 842 S.W.2d 696, 697
(Tex. App.--Tyler 1992, no pet.). "When title to property is taken in the name of
someone other than the person who advances the purchase price, a resulting trust is created
in favor of the payor. Nolana Dev. Ass'n v. Corsi, 682 S.W.2d 246, 250 (Tex.1984);
Cohrs v. Scott, 338 S.W.2d 127, 130 (Tex.1960)." Tricentrol Oil Trading, Inc. v.
Annesley, 809 S.W.2d 218, 220 (Tex. 1991). The Fire Department refers to no evidence
the District paid the purchase price in the character of anything other than a purchaser or
by way of loan. See Lifemark Corp. v. Merritt, 655 S.W.2d 310, 317 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.). See also Sahagun v. Ibarra, 90 S.W.3d
860, 863-64 (Tex. App.--San Antonio 2002, no pet.). The evidence is factually sufficient
to support the imposition of a resulting trust. Issue three is overruled. 

 The judgment of the trial court is AFFIRMED.

 PER CURIAM


Submitted on October 28, 2003

Opinion Delivered December 11, 2003



Before Burgess, Gaultney, and Hill (3), JJ.
1. John McDonnell is listed as a pro se appellee in the District's brief but did not file
a separate brief.
2. The District is the successor in interest to all of the Fire District's assets and
obligations. 
3. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code
Ann. § 74.003(b) (Vernon 1998).