In re Carolyn M. GETTINGS, Debtor.

Catherine A. WANNAMAKER, Plaintiff,

v.

Carolyn M. GETTINGS, Defendant.

**Bankruptcy No. 90–6730–8P7.
Adv. No. 90–570.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 12, 1991.

Harvey Paul Muslin, Tampa, Fla., for plaintiff.

Carolyn M. Gettings, defendant pro se.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the dischargeability vel non of a debt owed by Carolyn M. Gettings (Debtor) to Catherine A. Wannamaker (Plaintiff). The original attempt to declare this debt to be nondischargeable was submitted for this Court's consideration by a pleading entitled "Objection to Debtor's Claim for Discharge of Debt to Catherine A. Wannamaker and Complaint". This pleading, filed by the Plaintiff in proper person, purported to seek a determination by this Court that the judgment which she obtained against the Debtor in the Circuit Court of Sarasota County in the amount of $50,000 should be excepted from the overall protection of the general bankruptcy discharge by virtue of § 523(a)(5)(B). On November 14, 1990, this Court entered an Order which dismissed the pleading described earlier for procedural defects without prejudice and granted the Plaintiff leave to cure the procedural defects. Thereafter, the Plaintiff timely filed a complaint in which she attempted to set forth a claim of nondischargeability based on § 523(a)(4), (5) and (6) of the Bankruptcy Code. At the duly scheduled pretrial conference where the Debtor appeared without representation, this Court ruled that the refiled complaint failed to set forth a viable claim under § 523(a)(4) and (5) and dismissed the same with prejudice and scheduled a final evidentiary hearing to consider the remaining claim based on § 523(a)(6). It was not until the matter was set for final evidentiary hearing that the Plaintiff obtained the services of counsel.

At the final evidentiary hearing, the Debtor represented herself and the following relevant facts were established:

At the time relevant to this controversy, the Debtor was a practicing attorney in Sarasota, Florida. In January, 1986, the Debtor was engaged by the Plaintiff to represent her in a divorce proceeding instituted by her husband in the Circuit Court in and for Sarasota County, Florida. The Plaintiff was concerned that her husband would dispose of certain marital assets and in July, 1986, she delivered 1,000 shares of Philadelphia Electric Company stock to the Debtor for safekeeping.

In November, 1986, the Plaintiff retained the services of another attorney, and although she did not formally discharge the Debtor, it is without dispute that the Debtor no longer represented her in the ongoing divorce proceeding. On November 24, 1986, the Plaintiff wrote to the Debtor and notified her that she already retained Gerald B. Keane to represent her. She also informed the Debtor that she would appreciate any help and information the Debtor would furnish to Mr. Keane, her newly retained counsel. (Debtor's Exhibit #2). Mr. Keane prepared a stipulation for substitution of counsel which was signed by the Debtor and approved by the Circuit Court on December 18, 1986. (Debtor's Exhibit #4).

Beginning in January, 1987, the Plaintiff repeatedly requested the Debtor to return her stock certificates delivered to the Debtor earlier and she sent the Debtor several letters to that effect. (Debtor's Exhibits #5, #6, #10). None of these requests were honored by the Debtor. In the meantime, the Plaintiff was cited for civil contempt by the Circuit Court pursuant to a Motion for Contempt filed by her former husband based on the allegation of her husband that she failed to deliver 400 shares of Philadelphia Electric stock which was awarded to her former husband by the divorce decree. On June 16, 1987, the Circuit Court entered an Order finding the Plaintiff to be guilty of willful contempt of Court, based not only on her failure to surrender the stock certificates to her husband but also based on her failure to comply with some other provisions of the divorce decree, and the Court fined the Plaintiff $2,000 and directed the payment of same to her former husband. (Debtor's Exhibit #17).

On June 17, 1988, the Plaintiff filed a complaint in proper person in the Circuit Court of the Twelfth Judicial Circuit against the Debtor alleging that the Debtor "willfully and wantonly" failed to exercise due diligence and skill in representing her in the divorce proceeding for which the Plaintiff demanded judgment in excess of the jurisdictional amount. In her second amended complaint, the Plaintiff charged that the Debtor willfully failed to return her personal property, as a result of which the Plaintiff was found to be in civil contempt. Based on the Debtor's alleged gross negligence, the Plaintiff sought both compensatory and punitive damages. (Plaintiff's Exhibit #1).

In due course, the action was tried by jury. In the instructions given to the jury, the trial Court stated, inter alia, that if the jury found in favor of the Plaintiff, the jury may award any damages caused to the Plaintiff by the Debtor's failure to return the Philadelphia Electric stock, including costs and fees reasonably incurred by the Plaintiff in subsequent enforcement proceedings, and also punitive damages if it was found that the Debtor willfully and wrongfully withheld the stock certificates from the Plaintiff. The Court also instructed the jury that punitive damages may be awarded if the jury found that the Debtor's conduct was so gross and flagrant as to show a reckless disregard of human life or of the safety of persons exposed to the effects of such conduct. (sic) (Debtor's Exhibit #34). The jury returned a verdict in favor of the Plaintiff and based on the verdict, the Court entered a final judgment in favor of the Plaintiff and against the Debtor in the following amounts:

(a) Stock issue—actual damages—$15,000

(b) Punitive damages on stock issue—$80,000

(c) Loss of permanent alimony—$50,000.

In the final judgment, the Court reduced the punitive damages award to $45,000 based on Fla.Stat. § 768.73(1)(a) and (b). The Court also awarded $5,723.27 to the Debtor by reducing the net amount of Plaintiff's judgment to $104,276.73. (Plaintiff's Exhibit #1). These are the salient facts on which the claim of nondischargeability asserted by the Plaintiff is based.

 Before considering the Plaintiff's claim, it should be noted at the outset that the overriding purpose of the Bankruptcy Code is to release the Debtor from the burden of indebtedness and provide the Debtor with a new opportunity in life, free

from the pressures of pre-existing debt. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Therefore, the provisions of the Bankruptcy Code providing for exception to discharge in § 523(a) should be strictly construed as against the party asserting the claim of nondischargeability and liberally in favor of the Debtor.

The Bankruptcy Code is silent regarding the standard of proof necessary to establish an exception to the discharge under § 523(a). In considering the appropriate standard of the burden of proof, the Circuit Courts have been split on this issue. Several Circuits, including the Eleventh Circuit, have held that the standard of proof necessary to sustain a claim of nondischargeability under § 523(a) is clear and convincing. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988); *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Black*, 787 F.2d 503, 505 (10th Cir.1986); *In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir. 1985). Only the Fourth Circuit adopted the preponderance of the evidence standard. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988).

The Supreme Court recently considered the standard of proof issue and held that the preponderance of the evidence standard is appropriate in cases under § 523(a) of the Bankruptcy Code. *In re Garner*, 73 B.R. 26 (Bankr.W.D.Mo.1987), rev'd, 881 F.2d 579 (8th Cir.1989), *rev'd*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thus, the Supreme Court has rejected the argument that the clear and convincing standard adopted by several courts is required to give effect to the "fresh start" policy of the Bankruptcy Code.

■ The Plaintiff's claim of nondischargeability is based on § 523(a)(6), which provides as follows:

§ 523. Exceptions to discharge

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

This Court is aware that there is a split in authority regarding the phrase "willful and malicious." This phrase has been interpreted by some courts to require an intentional act which results in injury, and other courts require a showing of specific intent to injure. *See, e.g., In re DeRosa*, 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Finnie*, 10 B.R. 262 (Bankr.Mass.1981). This Court is inclined to follow the former, more liberal line of authorities, which do not require a Plaintiff to prove that a Debtor's motive was to harm the creditor or the creditors interest in property. *Communications Workers of America v. Akridge*, 89 B.R. 66 (9th Cir. BAP 1988).

Applying the foregoing principles to the facts of this case, this Court is satisfied that the Plaintiff did establish with the requisite degree of proof that the Debtor did in fact willfully and intentionally, without just cause, refuse to turn over and surrender the stock certificates in Philadelphia Electric which were given to her solely for safekeeping and in which she never had and does not even claim, any propriety rights. This Court expressly rejects the Debtor's explanation that she failed to turn over the stock certificates because she no longer represented the Plaintiff and the Plaintiff had an attorney. Therefore, she would only deal with this newly-retained attorney of the Plaintiff. This proposition lacks any persuasive evidentiary support, especially in light of the fact that the Plaintiff was the Debtor's former client and certainly was not in an adversary posture with the Debtor since most of these things occurred during the pendency of the divorce proceeding even before the Plaintiff engaged the services of another attorney. Moreover, the Plaintiff's new attorney maintained an office in the very same building where the Debtor maintained her office, possibly less than 100 feet away, and, therefore, it would not have been any problem whatsoever for the Debtor to walk over to Mr. Keane's office and turn over the stock certificates demanded by the Plaintiff. The facts of this case leave no

doubt that the Debtor held onto the stock certificates as leverage to coerce payment of attorneys fees.

In sum, there is no question that the Debtor did convert the stock by wrongfully withholding same from the Plaintiff, and for this reason the Plaintiff's claim based on the final judgment shall be excepted from the general discharge. However, this is limited to the award by the Circuit Court of $15,000.00 for damages relating to the stock issue and of $45,000.00 for punitive damages, less $5,723.27, which was a judgment in favor of the Defendant and against the Plaintiff.

In total, the Debtor's debt to the Plaintiff in the amount of $54,276.73 shall be declared nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. A separate final judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.