**In the Matter of Gale H.
TOUCHSTONE,
Debtor.**

**TRICENTROL OVERSEAS, LTD.,
and Tricentrol Oil Trading,
Inc., Plaintiffs,**

v.

**Gale H. TOUCHSTONE, Defendant.**

**Bankruptcy No. 92–30100–BKC–RAM.
Adv. No. 92–0276–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 29, 1993.

Joel M. Aresty, Kelly, Drye & Warren, Miami, FL, William H. Kiekhoffer, III and Kenneth J. Karl, Kelly, Drye & Warren, Los Angeles, CA, for plaintiffs.

Edward A. Marod, West Palm Beach, FL, for defendant.

### MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROBERT A. MARK, Bankruptcy Judge.

This adversary proceeding came to be heard on plaintiffs' motion for summary judgment. On December 10, 1992, the Court announced its ruling partially granting the motion and advising that the oral ruling would be supplemented by a written opinion. This opinion supplements and expands upon the Court's ruling at the December 10, 1992 hearing.

## I.

### SUMMARY

Plaintiffs, Tricentrol Overseas, Ltd., (TOSL) and Tricentrol Oil Trading, Inc., (TOTI), seek a determination that the remaining monies owed by defendant Gale Touchstone (referred to as "Touchstone" or the "debtor"), under a state court judgment in the total amount of $1,170,790 are nondischargeable alternatively under Sections 523(a)(2)(A), (a)(4) or (a)(6) of the Bankruptcy Code. The plaintiffs argue that the state court record in *Tricentrol Oil Trading Inc. v. Gale H. Touchstone*, Case No. 87–30008, in the District Court of Harris County, 113th Judicial District (the "Texas Action"), and the appeal taken therefrom conclusively establish the elements of its dischargeability claims and therefore seeks summary judgment.

After reviewing applicable portions of the record in the Texas Action, including the specific findings of the jury incorporated in the judgment in the Texas Action, analyzing the decision of the Texas Supreme Court in *Tricentrol Oil Trading Inc. v. Annesley*, 809 S.W.2d 218 (Tex. 1991) and the opinion on remand by the Fourteenth Court of Appeals dated November 5, 1992, 841 S.W.2d 908 (Tex.1992) (the "Appellate Opinion on Remand"), considering the arguments of counsel and the extensive memoranda filed in this proceeding, the Court concludes that summary judgment will be granted in favor of the plaintiffs on the § 523(a)(4) and (a)(6) claims. The nondischargeable debt includes the punitive and compensatory damages awarded in the Texas Action on the conversion and breach of fiduciary duty claims plus post-judgment interest through the filing date of this Chapter 7 case.

Summary judgment will be entered in favor of the defendant on the § 523(a)(2) claim. The elements of fraud under § 523(a)(2) were not conclusively established in the state court trial. Finally, the Court denies summary judgment to the plaintiffs and will enter summary judgment

in favor of the defendant on the attorneys' fees awarded in the Texas Action.

As explained below, the doctrine of collateral estoppel precludes the debtor from relitigating whether the conversion damages awarded in the Texas Action constitute a debt for willful and malicious injury and from relitigating whether his breach of fiduciary duty constituted defalcation while acting in a fiduciary capacity.

## II.

## PROCEDURAL BACKGROUND

The factual and procedural background is extensive.

### A. *The Underlying Action*

TOTI and its parent company, TOSL, were engaged in oil trading in the United States and the United Kingdom. TOTI purchased two seats (the "Seats") on the New York Mercantile Exchange (NYMEX). NYMEX rules apparently bar corporations from owning Seats in their own names, but officers can take Seats in their individual names and confer trading privileges on their corporations.

At the time the Seats were acquired, Touchstone was vice-president of TOTI. TOTI paid for the Seats and they were put in Touchstone's name. Sometime later, after Touchstone had become president, TOTI suffered significant losses. TOSL sold TOTI and the new owner terminated Touchstone. However, TOSL retained the responsibility to settle any claims that Touchstone may have had against the two plaintiffs here, TOTI or TOSL. TOSL, TOTI and Touchstone entered into an employment termination agreement (the "Agreement"). Touchstone received $75,000 and the parties executed mutual releases. At that point Touchstone did not assert any right to the Seats on the Exchange. The Seats were not mentioned during the negotiations of the Agreement or referred to in the written Agreement.

When Touchstone refused to turn over the Seats, the plaintiffs filed an action in the state court in Texas against Touchstone and a co-defendant, Margaret Annesley, to recover the Seats. The jury returned a verdict and awarded compensatory and punitive damages to the plaintiffs for conversion, breach of fiduciary duty and breach of contract. In conformance with the jury verdict, the trial court decreed that TOTI was the legal owner and holder of all right, title and interest in the Seats.

The Judgment entered by the Court on May 3, 1989 incorporated compensatory damages in the amount of $546,000 for conversion and the same amount for breach of fiduciary duty, $200,000 in punitive damages on the conversion claim, a separate award of $146,000 in punitive damages on the breach of fiduciary duty claim, $310,000 in attorneys' fees and prejudgment interest.

After the judgment, Touchstone transferred the seats to TOTI and, as provided in the judgment, the compensatory damage award of $546,000 was reduced to $16,000. Thus, the primary claims at issue here are the two separate punitive damage awards totalling $346,000 and the $310,000 attorneys fee award.

### B. *Actions In The Texas Appellate System*

Defendant Touchstone appealed the Texas court judgment to the Fourteenth Court of Appeals of Texas, Appeal No. A14–89–00811–CV, 1990 WL 113747 (the "Texas Appellate Court"). The Texas Appellate Court reversed and remanded the case to the trial court. The plaintiffs appealed that decision to the Texas Supreme Court which, in turn, reversed the judgment of the Texas Appellate Court and remanded the case to the Texas Appellate Court for reconsideration of defendant's appeal. 809 S.W.2d at 221.

While the Texas Action was pending once again in the Texas Appellate Court for review of all issues in the trial, on January 15, 1992, the defendant Touchstone filed his petition for Chapter 7 relief in this Court. The plaintiffs timely filed the instant complaint and alleged that based upon the judgment and jury verdict in the Texas Action, the entirety of the unsatis-

fied portion of the judgment in the Texas Action should be deemed nondischargeable under Bankruptcy Code Sections 523(a)(2), (a)(4) and (a)(6). Absent this adversary proceeding, Touchstone's discharge in this Chapter 7 case would discharge the entire Texas judgment.

The original memoranda and oral argument focused on whether collateral estoppel could be applied to the judgment in the Texas Action following the remand by the Texas Supreme Court to the Texas Appellate Court for further appellate review. The procedural uncertainty was clarified by the Texas Appellate Court's November 5, 1992 opinion on remand, and its judgment entered in conjunction with that opinion. The Texas Appellate Court found no error in the trial court judgment and affirmed in all respects the original trial court judgment and jury verdict.

In addressing the breach of fiduciary duty claim, the Texas Appellate Court concluded that "Touchstone breached his fiduciary duty as a corporate officer by attempting to appropriate corporate property for his own financial benefit and breached his duty as a trustee of corporate property by refusing to carry out TOTI's demands as beneficiary of the trust property." Appellate Opinion on Remand, 841 S.W.2d at 910. In short, the Texas Appellate Court found that Touchstone breached his fiduciary duty both as a corporate officer and as a trustee of corporate property.

With respect to the conversion claim, the Texas Appellate Court stated that "Touchstone's failure to return the trust property at TOTI's direction supports the jury's findings of conversion." Appellate Opinion on Remand, 841 S.W.2d at 910. It noted further that "the jury specifically found Touchstone's conversion of the assets was intentional, as was his breach of fiduciary duty." *Id.* In approving the punitive damage award the court concluded that "malice may be implied" from the jury's findings. Finally, the opinion on remand found no abuse of discretion in the trial court's award of attorneys' fees to TOTI and TOSL in the declaratory judgment action.

III.

## EFFECT OF THE JUDGMENT, JURY VERDICT AND APPELLATE OPINIONS ON PLAINTIFFS' NONDISCHARGEABILITY CLAIMS

■ Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. *In re Keene*, 135 B.R. 162 (Bankr.S.D.Fla.1991). The principles of collateral estoppel may be applied to foreclose a relitigation of facts in a dischargeability proceeding. *Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 658, 112 L.Ed.2d 755, 763 (1991); *In re Latch*, 820 F.2d 1163 (11th Cir.1987), *In re Halpern*, 810 F.2d 1061 (11th Cir.1987), and *In re Held*, 734 F.2d 628 (11th Cir.1984).

■ To determine the preclusive effect of the prior Texas judgment, the Court must first decide whether to apply the Texas or federal law of collateral estoppel. Despite some difference of opinion in the federal case law, this Court has concluded in two prior decisions that the issue is no longer subject to doubt—if the prior judgment was in a state court, then the collateral estoppel law of that state must be applied. *Johnson v. Keene*, 135 B.R. 162 (Bankr.S.D.Fla.1991) and the cases cited therein, including *In re Feldstein*, 93 B.R. 272 (Bankr.M.D.Fla.1988), *Chang v. Daniels*, 91 B.R. 981 (Bankr.M.D.Fla.1988) and *Sciarrone v. Brownlee (Matter of Brownlee)*, 83 B.R. 836 (Bankr.N.D.Ga.1988). *See also In re Kecskes*, 136 B.R. 578 (Bankr. S.D.Fla.1992).

■ Therefore, this Court looks to Texas law to determine the criteria for use of the Texas state judgment to collaterally estop Touchstone from litigating issues in this dischargeability proceeding. In seeking to invoke the doctrine of collateral estoppel under Texas law, a party must establish that:

(1) the parties in the second action were adversaries in the prior action;

(2) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; and

(3) those facts were essential to the judgment in the prior action.

*Dent v. Federal Sign & Signal Corporation,* 773 S.W.2d 599 (Tex.Ct.App.1989); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984).

The judgment in the Texas Action was in favor of the plaintiffs TOTI and TOSL and against the defendant Touchstone. Thus, the adversarial posture element is satisfied. Second, now that the Texas Appellate Court has affirmed in all respects the trial court judgment, the "actually litigated" element is also satisfied. The Court must and does consider the jury verdict and final judgment in the Texas Action as final for the purpose of applying collateral estoppel.

The only element of collateral estoppel requiring further analysis is whether the Texas state court necessarily resolved issues identical to the issues which must be decided to sustain plaintiffs' Section 523 claims. Each claim is analyzed below.

### A. *Section 523(a)(6)*

The specific findings incorporated in the jury verdict, together with the Texas Appellate Court's opinion on remand, affirming and discussing those findings, unambiguously establish that both the compensatory and punitive damages awarded in connection with the finding of conversion under Texas law constitute a debt for willful and malicious injury excepting the debt from discharge under § 523(a)(6).

■ Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity". An act is willful and malicious if it is done with the intention and knowledge that it could harm a cognizable right of another entity. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988); *Impulsora Del Territorio Sur, S.A. v. Cecchini (In Re Cecchini),* 780 F.2d 1440 (9th Cir.1986), 3 Collier on Bankruptcy § 523.16[1] (Matthew Bender 1992). Constructive or implied malice is sufficient to satisfy the malice requirement under 523(a)(6). *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988), *United Bank of Southgate*

*v. Nelson,* 35 B.R. 766 (N.D.Ill.1983), *In re Triggiano,* 132 B.R. 486 (Bankr.M.D.Fla. 1991).

■ Although conversion is not named specifically as a tort that gives rise to a § 523(a)(6) claim, it is generally recognized that willful and malicious conversion is within the scope of conduct described in § 523(a)(6). *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988); *In re Triggiano, supra,* 132 B.R. at 490. *See also In re James,* 124 B.R. 614 (Bankr. M.D.Fla.1991); *Chrysler Credit Corp. v. Rebhan, supra,* 842 F.2d at 1264 (debt arising from debtor's conversion held to be nondischargeable under § 523(a)(6)).

■ Here, in the Texas Action, the jury specifically found by a preponderance of the evidence that Touchstone converted the two NYMEX Seats. The jury found further that the conversion was intentional. Since the charge of the court defined intentional as "an act knowingly, deliberately, willfully or designedly", the jury necessarily found the defendant's conduct to be willful as that term has been interpreted under § 523(a)(6).

With respect to a finding that the conduct was malicious under § 523(a)(6), under Texas law, in cases where there is a knowing conversion, ill will or malice is implied. *First National Bank of McAllen v. Brown,* 644 S.W.2d 808 (Tex.Ct.App.1982). Moreover, the Texas Appellate Court's opinion on remand specifically states that malice may be implied from the jury's findings of intentional misconduct. Finally, the jury's award of punitive damages provides further support for this Court's conclusion that the state court judgment established at least the implied malice required to prove malicious injury under § 523(a)(6).

In sum, the jury's findings in the state court case included a finding of willful and malicious conversion by the defendant sufficient to except from discharge the compensatory damage award under § 523(a)(6).

■ As to the punitive damages for conversion, question number five in the special interrogatories to the jury in the

Texas Action asked "what sum of money, if any, do you find from a preponderance of the evidence should be awarded to TOTI for punitive damages against Touchstone for his intentional conversion of the two NYMEX Seats?" Special Interrogatory No. 5. The jury responded with a verdict awarding punitive damages for intentional conversion in the amount of $200,000.

Where willfulness and malice exist, the compensatory and punitive damages flowing from the conduct are nondischargeable under Section 523(a)(6). *In re Adams,* 761 F.2d 1422 (9th Cir.1985); *In re Dean,* 79 B.R. 659 (Bankr.N.D.Tex.1987). Therefore, the $200,000 punitive damage award is also nondischargeable under 523(a)(6).

### B. *Section 523(a)(4)*

The compensatory damages awarded by the jury based upon debtor's breach of fiduciary duty are the same damages awarded for the conversion. This Court must still analyze the § 523(a)(4) claim since the jury entered a separate award of $146,000 in punitive damages for Touchstone's intentional breach of fiduciary duty.

The decision by the Texas Supreme Court, 809 S.W.2d at 220, found that Touchstone held the Seats in a resulting trust and that, as trustee, failed to make a fair and frank disclosure of his claim to the Seats. There is no question that this was a breach of fiduciary duty under Texas law. In addition, in response to question six and eight of the verdict form, the jury found that Touchstone breached his fiduciary duty to TOTI and that the breach was committed intentionally. Notwithstanding the verdict, the Court must analyze whether the "trustee" status bestowed upon Touchstone under the resulting trust theory discussed in the Texas Supreme Court's decision is sufficient to constitute defalcation while acting in a "fiduciary capacity" under the more narrow requirements of § 523(a)(4).

█ The scope of § 523(a)(4) was recently addressed in the Fifth Circuit's opinion in *Matter of Bennett,* 970 F.2d 138 (5th Cir.1992). In *Bennett,* the court stated that the requisite trust relationship must exist prior to the act creating the debt and without reference to that act. 970 F.2d at 142-3. In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor must have been a trustee before the wrong and without any reference to it. *Id.,* at 141-143; *Ragsdale v. Heller,* 780 F.2d 794, 796 (9th Cir.1986). *See also, Davis v. Aetna Acceptance Corp.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). In *Bennett,* the court further stated that a constructive trust is not sufficient to establish fiduciary capacity under Section 523(a)(4).

█ If a constructive trust is not within Section 523(a)(4), it initially appears that the debtor should prevail since the trial court judgment specifically imposed a constructive trust over the Seats. However, the lengthy analysis of the trust relationship in the Texas Supreme Court's decision, 809 S.W.2d at 218-220, and the characterization of that trust relationship in the Appellate Opinion on Remand, establishes that the requisite trust relationship does exist under the more flexible application of the express trust requirement described in the *Bennett* decision.

In *Bennett,* the court stated that the "technical or express trust requirement" is not limited to trusts that arise by virtue of a formal trust agreement but includes relationships in which trust type obligations are imposed pursuant to statute or common law. 970 F.2d at 143. The scope of the concept of fiduciary duty under Section 523(a)(4) is a question of federal law but state law is important in determining whether or not a trust relationship exists.

Based upon the discussion of the trust relationship in the Texas appellate decisions, this Court is satisfied that the requisite fiduciary relationship did exist. In describing the trust, the Texas Supreme Court stated that "when title to property is taken in the name of someone other than the person who advances the purchase price, a resulting trust is created in favor of the payor." 809 S.W.2d at 220.

Unlike a constructive trust which is imposed as a result of wrongdoing and would not qualify under the narrower concept of fiduciary capacity in Section (a)(4), the analysis by the Texas Supreme Court in this case suggests that the trust relationship here was created prior to and independent of the debtor's wrongful conduct. The Seats were always in Touchstone's name and he always had a fiduciary duty to act as a trustee with respect to that property. Quoting again from the Texas Supreme Court's decision:

As a trustee, Touchstone could only act at the direction of TOTI. He received no instructions from TOTI until it requested that he transfer the Seats. At that point, it was his duty to carry out the beneficiary's desires.

809 S.W.2d at 221.

The opinion by the Texas Appellate Court after remand also supports the conclusion that the requisite trust relationship existed prior to the wrongdoing:

Touchstone breached his duty as a trustee of corporate property by refusing to carry out TOTI's demands as beneficiary of the trust property.

Appellate Opinion on Remand, 841 S.W.2d at 910. In sum, this Court concludes that under Texas common law the requisite trust relationship existed between Touchstone and TOTI to establish fiduciary capacity within the meaning of Section 523(a)(4).

 Having concluded that Touchstone was acting in a fiduciary capacity, the only remaining question under Section 523(a)(4) is whether he committed a "fraud or defalcation." Generally, defalcation is a failure to account for money or property that has been entrusted to someone. *Matter of Vickers,* 577 F.2d 683 (10th Cir.1978). Defalcation does not require substantial culpability or misconduct.

 In simple terms, although plaintiff faced a difficult burden to prove fiduciary capacity, a comparatively relaxed standard is applied to prove that wrongful conduct constitutes defalcation. Here, Touchstone's intentional conversion of the Seats establishes the level of misconduct required

to prove defalcation. Therefore, the jury verdict and judgment of the trial court, as clarified by the Texas Supreme Court's opinion and the opinion on remand by the Texas Appellate Court conclusively established the facts necessary to prove that the compensatory and punitive damages judgment for breach of fiduciary duty are not dischargeable pursuant to § 523(a)(4).

While a recent Ninth Circuit decision held that punitive damages given in connection with a nondischargeable fraud under Section 523(a)(2) may be found to be dischargeable, this decision expressly distinguished punitive damages awarded in actions found nondischargeable under Sections 523(a)(4) and 523(a)(6). *In re Levy,* 951 F.2d 196, 198 (9th Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) ("an examination of both the language of Section 523(a)(2) and the structure established in Section 523 as a whole supports the conclusion that Section 523(a)(2), unlike Sections 523(a)(4) and 523(a)(6), does not bar discharge of punitive damages"). Here, the Court finds that the punitive damages awarded to plaintiffs in the Texas Action are also nondischargeable, as the jury specifically found that defendant's conduct was intentional and malice was implied in the behavior of the defendant. *See In re Manley,* 135 B.R. 137, 149 (Bankr.N.D.Okla.1992) ("punitive damages, which are properly assessed against a malefactor, may be excepted from discharge under 11 U.S.C. § 523(a)(4)"); *In re Gettings,* 130 B.R. 353, 356–357 (Bankr.M.D.Fla.1991) (punitive damages for wrongful conversion held nondischargeable under Section 523(a)(6)).

### C. *Postjudgment Interest*

 The judgment rendered in the Texas Action provides for interest on the damages awarded in plaintiff's favor against defendant. To the extent that such interest relates to the damage awards found to be nondischargeable, the interest which has accrued on such awards is also found to be nondischargeable. *See In re Lacy,* 947 F.2d 1276 (5th Cir.1991) (Texas state court judgment directing debtor to return $75,-

000, and to pay prejudgment and post-judgment interest and attorney's fees, given collateral estoppel effect by the bankruptcy court in an action brought by state court judgment creditors to determine that state court judgment is nondischargeable). This Court finds the interest that has accrued on the nondischargeable damage awards to be an integral part of plaintiff's claim, and therefore interest shall accrue at the rate set forth in the judgment rendered in the Texas Action. *See Matter of Hanna,* 872 F.2d 829, 830 (8th Cir.1989); *Matter of Kellar,* 125 B.R. 716, 721 (Bankr. N.D.N.Y.1989).

### D. *Attorneys' Fees*

■ On the attorneys' fee issue, the Court finds for the defendant Touchstone. Under Texas law, attorneys' fees are not recoverable in actions based on breach of fiduciary duty, fraud or other tortious misconduct. Rather, they are only recoverable if provided for in a contract or by statute.

■ Here, the award of attorneys' fees was based on the Texas Civil Practice and Remedies Code, Section 37.009, which allows attorneys' fees in declaratory judgment actions. The opinion of the Texas Appellate Court on remand specifically stated that it was affirming the trial court's award of attorneys' fees in the declaratory judgment action, so there is little question that such statute was the basis for the attorney fee award.

The plaintiffs argue that certain obligations ancillary to the nondischargeable debt should be deemed nondischargeable and that the Court should look at the connection between Touchstone's misconduct in converting the NYMEX Seats and the consequent need to expand attorneys' fees and costs to obtain the declaratory judgment relief. The Court does not find the tie to be sufficient nor the cases to be persuasive where the Texas Action included a separate declaratory judgment count that sought a determination of ownership of the Seats but did not allege any basis for a claim that would fit any of the Section 523 exceptions. In other words, the declaratory judgment count itself does not fit into any nondischargeable theory. Since there was a separate declaratory judgment count, the attorneys' fees need to be viewed as what they were, which are fees awarded under Tex.Civ.Prac. & Rem.Code Section 37.009.

The creditors argue that the fees should be deemed nondischargeable because the gist of the complaint and the need for declaratory relief arose from debtor's tortious and nondischargeable conduct. The Court rejects this argument. If Texas wanted tort victims to recover attorneys' fees, it could provide so directly. It would be wrong to increase the tort recovery indirectly by tying the attorneys' fees awarded in the declaratory judgment count to the tort claims, when under Texas law these fees could not have been awarded directly as part of the tort claims.

Even though there was no cross motion for summary judgment, it is appropriate for the Court to enter summary judgment for the defendant on the issue of the dischargeability of the attorneys' fees since there are no issues of fact and defendant is entitled to judgment as a matter of law. *See In re Stone,* 121 B.R. 25 (Bankr.D.Alaska 1990).

### IV.

### CONCLUSION

The Court finds nondischargeable the unpaid compensatory and punitive damages awarded in the Texas case plus post-judgment interest on that amount through the petition date. The attorneys' fee award is found to be dischargeable. A separate judgment shall be entered in accordance with this ruling and this ruling shall constitute the Court's findings of fact and conclusions of law.