PER CURIAM.
This appeal and cross-appeal stem from a property transaction gone bad. In September 1991, Bracha Holding, Inc. (“Bra-cha”), a Florida corporation, wholly owned by Seymour Deutsch (“Deutsch”), purchased the Maxine Hotel (“Maxine”) in Miami Beach. The Maxine was adjacent to two other hotels that Bracha owned and sought to refinance. First Wall Street SBIC, L.P. (“First Wall Street”), a small business investment company licensed by the United States Small Business Administration, financed the purchase of the Maxine and paid off the mortgages of the other hotels, thereby financing $1,475 million for Bracha. The promissory note for this deal was collateralized by a mortgage on the three hotels plus three other hotels that were owned by Deutsch. Deutsch and his wife also personally guaranteed the loan, and First Wall Street received a warrant to purchase 10% of Bracha’s shares. Alan Farkas was the president of First Wall *658 Street Management Co., Inc., and the general partner of First Wall Street. Farkas was the only person who acted on behalf of First Wall Street in its transactions with Bracha. Bracha and First Wall Street also entered into an agreement wherein First Wall Street was to provide management and consulting services to Bracha.
In August 1992, Deutsch and Farkas discussed First Wall Street’s financing of a sale of the three Bracha hotels to Deutsch’s daughter, Karen Bookbinder. First Wall Street agreed to provide all of the financing Bookbinder needed to purchase the hotels. Bracha sold the three hotels to Bookbinder for $5.1 million. Bookbinder took title of the hotels in the name of her wholly owned corporation, Bashert Enterprises, Inc. (“Bashert”). At closing, First Wall Street loaned Bashert $2.45 million, secured by a mortgage on the three hotels. The balance of the purchase price was financed by a $2.1 million purchase money junior mortgage that Bas-hert gave to Bracha and the $600,000 of existing mortgages that Bashert also assumed. Bookbinder and Eve Medical Corporation, another corporation wholly owned by Bookbinder, guaranteed the loan. The closing documents showed no cash to Bashert for working capital. Instead, Deutsch authorized Louis J. Pleeter, the attorney for First Wall Street, to hold $100,000 of Bracha’s sale proceeds in trust to pay Bashert’s $59,000 closing fees.
When the first installment of the mortgage came due, Bookbinder failed to make payment. Deutsch, holding a junior mortgage on the properties, asked Pleeter to pay the first installment from the remaining $41,000 that Pleeter was holding in trust. Pleeter asked both Deutsch and Bookbinder to authorize the disbursement of the funds in writing. Deutsch sent a written authorization and Bookbinder verbally agreed that she would do the same. Pleeter then wired the mortgage payment to First Wall Street. When Pleeter did not receive Bookbinder’s written authorization, he unilaterally and without authorization of either Bashert or Bracha, called First Wall Street and instructed it to return the mortgage payment. A week later, after receiving no payment, First Wall Street declared the loan in default, accelerated the balance due and demanded full payment.
Thereafter, First Wall Street filed a complaint against Bashert to foreclose its mortgage on the three hotels. Bracha was joined as a defendant in the action as a junior lien holder; Bookbinder and Eve were also joined in the action as guarantors of the loan. Instead of timely filing counterclaims in the foreclosure action, the defendants elected to bring this independent action. Bracha sought damages for breach of the consulting contract against First Wall Street and damages for fraud against First Wall Street and Farkas, individually. Bashert[1] also sued First Wall Street and Farkas for fraud and breach of fiduciary duty. They all sued Pleeter for legal malpractice and breach of fiduciary duty.
Bracha and Bashert jointly answered First Wall Street’s foreclosure complaint, initially bringing no counterclaims. Bas-hert amended its answer before trial and “recast” its affirmative defenses as counterclaims. Bracha did not seek to bring any counterclaim in the foreclosure action until the day of trial. The trial court denied Bracha leave to amend at that late date. The foreclosure action was tried and *659 a final judgment was entered in favor of First Wall Street, foreclosing the mortgage, extinguishing Bracha’s junior mortgage and dismissing Bookbinder’s counterclaims with prejudice. The judgment was affirmed by this court, without opinion. See Bashert Enterp., Inc. v. First Wall Street SBIC, LP, 656 So.2d 159 (Fla. 3d DCA 1995).
Thereafter, Bashert and Bracha moved forward with this underlying suit and filed a second amended complaint. Bracha amended its complaint further to add a claim against First Wall Street and Farkas for breach of fiduciary duty. First Wall Street raised the affirmative defenses of res judicata and collateral estoppel arising from the foreclosure judgment. First Wall Street moved for summary judgment against the plaintiffs. The trial court entered summary judgment in favor of First Wall Street against Bashert, but allowed Bracha’s claim against First Wall Street to continue. The case proceeded to a non-jury trial on Bracha’s claims against First Wall Street and a jury trial on the plaintiffs’ claims against Pleeter and Farkas. Farkas did not appear at trial and, upon Bracha’s motion, the trial court entered a default judgment against him. The court instructed the jury by interrogatory verdict, to determine the amount of damages that Bracha and Bashert had sustained as a result of Farkas’ fraud and breach of fiduciary duty. The jury found Farkas liable to Bracha on the fraud count in the amount of $1,000,000 and $975,000 on the breach of fiduciary duty claim. The trial court entered a final judgment, including pre-judgment interest, in favor of Bracha for $3,487,755.79. The jury found that Pleeter was liable to Bashert for breach of fiduciary duty in the amount of $100,000. After awarding pre-judgment interest from the date that the mortgage was declared in default, the trial court entered a final judgment against Pleeter in the amount of $176,216.76, which is the subject matter of Pleeter’s cross-appeal. The trial court also entered a final judgment in favor of First Wall Street on all of Bracha’s claims.
The claims raised in Bracha’s second amended complaint were virtually identical to its answer and affirmative defenses raised in the foreclosure proceeding. Thus, we find that they were barred from being raised in a subsequent suit. See Simco Operating Corp. v. City Nat’l Bank of Miami Beach, 341 So.2d 232, 234 (Fla. 3d DCA 1976) (where plaintiff filed answer and affirmative defenses in prior foreclosure proceedings which were virtually the same as allegations set forth in plaintiffs subsequent complaint, plaintiffs subsequent suit was barred by doctrine of “estoppel by judgment.”). Moreover, all of the claims raised here should have been raised by Bracha as compulsory counterclaims in the foreclosure action. Since they were not they were waived. See Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 (Fla.1992) (failure to raise compulsory counter-claim in first suit results in a waiver of that claim). Accordingly, since Bra-cha’s claims were barred/waived prior to trial, the final judgment in favor of First Wall Street was proper on this ground, and we affirm. See Combs v. State, 436 So.2d 93, 96 (Fla.1983) (where trial court reached right result albeit for wrong reasons, affirmance is proper); Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979) (a conclusion of trial court will generally be affirmed if alternative theory supports it).
On his cross-appeal, Pleeter claims that the jury verdict and subsequent final judgment must be reversed because there was no competent substantial evidence to establish that he had a fiduciary relationship to Bashert. We disagree. When *660 Pleeter voluntarily paid the mortgage installment on Bashert’s behalf, he assumed a duty to act prudently. See e.g., Sanderson v. Eckerd Corp., 780 So.2d 930, 932 (Fla. 5th DCA 2001). See also Capital Bank v. MVB, Inc., 644 So.2d 515, 518 (Fla. 3d DCA 1994) (“Fiduciary relationships are either expressly or impliedly created .... Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties.”). Thus, the jury, when faced with the evidence that Pleeter independently “recalled” the payment without notifying Bashert that no payment had been made, could reasonably have found that Pleeter acted unreasonably and breached a fiduciary duty that caused Bashert damages. Accordingly, we affirm. See Grossman v. Sea Air Towers, Ltd., 513 So.2d 686, 688 (Fla. 3d DCA 1987) (a jury verdict which is supported by the record will not be disturbed on review).
Finding no merit in the other arguments raised in the appeal and/or cross-appeal, we affirm.
Affirm.

. With regard to these suits, Bashert, Bookbinder and Eve will collectively be referred to as Bashert.