In re Louis Joseph PLEETER, Debtor.

Karen Bookbinder, Bashert Enterprises, Inc., a Florida corporation, and Eve Medical, Inc., a Florida Corporation, Plaintiffs,

v.

Louis Joseph Pleeter, Defendant.

Bankruptcy No. 02–33843–BKC–SHF.
Adversary No. 02–3353–BKC–SHF–A.

United States Bankruptcy Court,
S.D. Florida.

June 3, 2003.

Louis Joseph Pleeter, Boynton Beach, FL, pro se.

Deborah Menotte, West Palm Beach, FL, trustee.

***ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT***

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came before the Court upon consideration of the Defendant's Motion for Summary Judgment, filed by Louis Joseph Pleeter ("Pleeter"). On December 31, 2002, Pleeter filed the instant motion and his affidavit in support thereof. Thereafter, on January 24, 2003, Karen Bookbinder, Bashert Enterprises, Inc. and Eve Medical Corporation (collectively "the Plaintiffs") filed their Cross–Motion for Summary Judgment and Supporting Memorandum and their Memorandum in Opposition to Pleeter's Motion for Summary Judgment. On that same date, the Plaintiffs also filed the Affidavit of Karen Bookbinder and Sworn Testimony of Louis J. Pleeter in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. On February 4, 2003, Pleeter filed his Reply to Plaintiffs' Memorandum in Opposition to his motion for summary judgment. Subsequently, on February 21, 2003, Pleeter filed his Response to Plaintiffs' Motion for Summary Judgment and Supporting Memorandum. On March 10, 2003, the Plaintiffs filed their Reply Memorandum Regarding Motion for Summary Judg-

ment. Having considered both motions for summary judgment, the responses and replies made thereto, and for the reasons discussed below, the Court denies Pleeter's Motion for Summary Judgment and grants the Plaintiffs' Motion for Summary Judgment.

On July 15, 2002, Pleeter filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On November 22, 2002, the Plaintiffs commenced the above captioned adversary proceeding by filing their Complaint seeking a determination that the judgment debt Pleeter owes to the Plaintiffs is non-dischargeable under 11 U.S.C. § 523(a)(4) as a debt for fraud or defalcation while acting in a fiduciary capacity. On December 31, 2002, Pleeter filed his Motion for Summary Judgment stating that there is no genuine issue of any material fact and claiming that he is entitled to summary judgment as a matter of law because no fiduciary relationship existed between himself and the Plaintiffs and thus 11 U.S.C. § 523(a)(4) is not applicable to this case. On the other hand, on January 24, 2003, the Plaintiffs filed their cross-motion for summary judgment asserting that they are entitled to summary judgment as a matter of law because Pleeter's debt to the Plaintiffs arises from Pleeter's defalcation while acting in a fiduciary capacity and is non-dischargeable under 11 U.S.C. § 523(a)(4).

It is undisputed that on July 6, 2002, the Circuit Court for Eleventh Judicial Circuit in and for Miami–Dade County, Florida entered a Final Judgment against Pleeter awarding the Plaintiffs $176,217.76 (the "Final Judgment"). The Final Judgment was entered pursuant to the jury's finding that "Defendant Louis J. Pleeter breached a fiduciary duty owed to Plaintiffs Karen Bookbinder, Bashert Enterprises, Inc., and Eve Medical Corporation." The Final Judgment was affirmed on appeal in *Bracha Holding, Inc. v. United States Small Business Administration, et al.*, 800 So.2d 657 (Fla. 3d DCA 2001).

The Final Judgment arose from a November 30, 1992 real estate closing (the "Transaction"). At the closing of the Transaction, Seymour Deutsch ("Deutsch") sold three hotels located on Miami Beach to his daughter, Karen Bookbinder ("Bookbinder"), for $5.1 million. Deutsch's corporation, Bracha Holding, Inc. ("Bracha"), was the seller, and Bookbinder took title to the three hotels in the name of her wholly owned corporation, Bashert Enterprises, Inc. ("Bashert"). First Wall Street SBIC, L.P. ("First Wall Street") provided financing for the Transaction. Bookbinder and Eve Medical Corporation guaranteed First Wall Street's loan to Bashert. At all times, Bookbinder was the sole owner of both Bashert and Eve Medical Corporation.

Pleeter was the attorney representing First Wall Street in the Transaction. Pleeter also provided legal services to Bookbinder and Bashert by incorporating Bashert and serving as Bashert's initial registered agent. Pleeter prepared the closing documents for the Transaction, and he prepared a number of documents for the closing that were strictly between Bashert as buyer and Bracha as seller, including the Agreement for Sale and Purchase, the Bill of Sale, a $2.1 million Promissory Note from Bashert to Bracha, and other documents to secure the Promissory Note. First Wall Street was not a party to those documents. The loan statement that Pleeter prepared included a statement that real estate escrow was disbursed "to Louis J. Pleeter, Escrow Agent," and a Compliance Agreement that Pleeter prepared referred to Pleeter as "the closing agent."

Ultimately, the funds to finance the Transaction were deposited into Pleeter's escrow account. In addition, $122,500.55 in funds that had been deposited in escrow with Schantz, Schatzman & Aaronson, P.A.

in a prior transaction were transferred to Pleeter's escrow account, and Pleeter, Deutsch and Bookbinder signed an Escrow Agreement designating Pleeter as the "Escrow Agent" for those funds. Shortly after the closing of the Transaction, Pleeter disbursed the funds from his escrow account, including a $1,522,416.63 check to First Wall Street.

After the closing of the Transaction, Pleeter still held proceeds from the closing in his escrow account. Pleeter stated that he was holding the funds for Bookbinder and Deutsch until the two of them told him what to do with the funds. Pleeter testified that he thought the funds belonged to both Bookbinder and Deutsch. Pleeter was advised at the closing that, from the closing proceeds, $100,000 was being left in his escrow account for the benefit of Bookbinder to be used to cover her expenses to close the transaction. Deutsch and Bookbinder both directed Pleeter to pay the first mortgage payment with funds that he was holding in his trust account. Deutsch sent written authorization to Pleeter approving the disbursement, and Bookbinder verbally agreed that she would do the same. Accordingly, Pleeter made the first mortgage payment from the money he was holding in his trust account by forwarding the amount of the first payment to First Wall Street on January 12, 1993. Subsequently, on January 27, 1993, Pleeter, unilaterally and without the authorization of Bashert or Bracha, instructed First Wall Street to return Bashert's first mortgage payment to Pleeter's escrow account. The return of the first mortgage payment created a default, and on February 2, 1993, First Wall Street sent Bashert a letter declaring the loan in default and declaring the entire principal balance of $2,450,000 plus interest immediately due.

### Conclusions of Law:

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I). This is a core matter in accordance with 28 U.S.C. § 157(b)(2)(I).

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 91 L.Ed.2d 202, *Rice v. Branigar Org., Inc.*, 922 F.2d 788 (11th Cir.1991); *In re Pierre*, 198 B.R. 389 (Bankr.S.D.Fla.1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding delay and expense associated with trial. *See United States v. Feinstein*, 717 F.Supp. 1552 (S.D.Fla.1989). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir.1988).

The legal standard governing the entry of summary judgment has been articulated by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson*, the Supreme Court stated that the standard for summary judgment mirrors the standard for directed verdict

under Federal Rule of Civil Procedure 50(a), which provides that the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. *Id.* at 250, 106 S.Ct. 2505. The Court explained that the inquiry under summary judgment and directed verdict are the same: "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *Id.* at 252, 106 S.Ct. 2505. Rule 56 must be construed not only with regard to the party moving for summary judgment but also with regard to the non-moving party and that party's duty to demonstrate that the movant's claims have no factual basis. *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could find for the [non-moving party]." *Id.* Thus, the non-moving party must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to prevent a court's entry of summary judgment. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *In re Pierre,* 198 B.R. 389 (Bankr.S.D.Fla. 1996).

The instant issue is whether a state court judgment against Pleeter is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) where Pleeter was an attorney and escrow agent who failed to follow the Plaintiffs' instructions when he unilaterally and without the Plaintiffs' authorization instructed First Wall Street to return Bashert's first mortgage payment to his escrow account.

Section 523(a)(4) of the Bankruptcy Code provides that a discharge in bankruptcy "does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. § 523(a)(4). In order for a debt to be non-dischargeable under the "defalcation" provision, the Court must find both that a fiduciary relationship existed and that a defalcation occurred. *In re Codias,* 78 B.R. 344, 346 (Bankr. S.D.Fla.1987).

*Sub judice,* in a prior trial of an action that the Plaintiffs brought against Pleeter, a state court jury determined that there was a fiduciary relationship between Pleeter and the Plaintiffs and that Pleeter breached a fiduciary duty owed to the Plaintiffs. That finding was affirmed by the Third District Court of Appeal.

A question of fact "distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies. . . ." *Montana v. U.S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), *quoting Southern Pacific R. Co. v. U.S.,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Collateral estoppel bars re-litigation of previously adjudicated issues. *In re St. Laurent,* 991 F.2d 672, 675 (11th Cir.1993), *citing Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Collateral estoppel applies in bankruptcy dischargeability proceedings. *Id.; In re Touchstone,* 149 B.R. 721, 725 (Bankr. S.D.Fla.1993). Where a prior judgment establishes each of the elements essential to deny discharge, the debtor is estopped by that judgment from re-litigating those facts in the bankruptcy court. *In re Evans,* 1 B.R. 229, 231 (Bankr.S.D.Fla.1979). As determined by the state court jury and upheld on appeal, Pleeter breached a fiduciary duty to the Plaintiffs while acting in

a fiduciary capacity. Thus, the state court previously determined that Pleeter indeed acted in a fiduciary capacity to the Plaintiffs, and that determination is entitled to collateral estoppel effect. *See In re Postell*, 132 B.R. 788 (Bankr.N.D.Ga.1991) (granting summary judgment in favor of creditor on holding that the factual issues relevant to the bankruptcy court adversary proceeding were identical to the issues determined in the state court litigation; therefore, debtor was collaterally estopped from denying dischargeability).

The remaining issue is whether Pleeter's breach of his fiduciary duty to the Plaintiffs constitutes a defalcation so as to render his judgment debt to the Plaintiffs non-dischargeable under 11 U.S.C. § 523(a)(4). "Defalcation" has been defined as a failure to account for or produce funds entrusted to a fiduciary. *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993); *In re Touchstone*, 149 B.R. at 728. Defalcation does not require the element of intent, and defalcation need not be intentional conduct; negligence or ignorance may be defalcation. *In re Codias*, 78 B.R. at 346. Indeed, defalcation does not require substantial culpability or misconduct. *In re Touchstone*, 149 B.R. at 728. Creating a debt by breaching a fiduciary duty is sufficient to constitute defalcation, even in the absence of evidence of bad faith. *In re Menendez*, 107 B.R. 789, 792 (Bankr. S.D.Fla.1989).

The debt in question was created by Pleeter's breach of his fiduciary duties to the Plaintiffs. A debt for breach of fiduciary duties, even in the absence of bad faith, is sufficient to constitute defalcation. Pleeter committed a defalcation when he unilaterally and without authorization had First Wall Street return Bashert's first mortgage payment to Pleeter's escrow account. Pleeter testified that he was holding those funds for Bookbinder and Deutsch and that they were to be dis-bursed pursuant to the agreement and direction of those two individuals. Although Bookbinder and Deutsch both directed Pleeter to use a portion of the escrow funds to make Bashert's first mortgage payment, Pleeter caused the loan to go into default by having the first mortgage payment returned to his escrow account without the knowledge or authorization of Bookbinder or Deutsch.

There is no issue of material fact as to Pleeter's breach of his fiduciary duty to the Plaintiffs and thus no issue of material fact as to whether Pleeter committed a defalcation. Because no issues of material fact exist, the Plaintiffs are entitled to summary judgment as a matter of law. Accordingly, it is

**ORDERED** that

(1) Pleeter's Motion for Summary Judgment is **denied.**

(2) The Plaintiffs' Motion for Summary Judgment is **granted.**